[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 380.]

VACCARIELLO, N.K.A. RESHA, ET AL., APPELLANTS, *v.* SMITH & NEPHEW

RICHARDS, INC., APPELLEE.

[Cite as *Vaccariello v. Smith & Nephew Richards, Inc.*, 2002-Ohio-892.]

*Civil procedure—Filing of a class action tolls the statute of limitations as to all members of the class who would have been parties had the suit been permitted to continue as a class action—Torts—Defective products—Pedicle screw/Rogozinski System.*

(No. 00-1556—Submitted September 18, 2001—Decided March 6, 2002.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 76594.

_____

SYLLABUS OF THE COURT

The filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

_____

PFEIFER, J.

{¶ 1} On June 8, 1993, Mary Vaccariello, n.k.a. Mary Resha, had back surgery, which included the implantation of a medical device known as a "pedicle screw" into her spine.[1] Pain similar to that which had precipitated the surgery recurred. On October 29, 1993, Vaccariello became aware that the pedicle screw itself might be the source of her then current pain. On November 10, 1993, Vaccariello was examined by a different doctor, who stated his belief that the pedicle screw was the source of her back pain.

{¶ 2} On December 15, 1995, Vaccariello filed suit against appellee Smith & Nephew Richards, Inc., and others, claiming that they had failed to warn her of the

_____

1. This matter comes before the court pursuant to summary judgment proceedings. Accordingly, we have construed the facts most favorably towards plaintiffs-appellants.

medical risks associated with the pedicle screw and the federal Food and Drug Administration ("FDA") regulatory status of the pedicle screw. As one of its twenty-nine enumerated defenses to Vaccariello's amended complaint, Smith & Nephew Richards asserted that Vaccariello's suit was barred by the statute of limitations.

{¶ 3} The trial court determined that the statute of limitations began to run on October 29, 1993, more than two years before the date the suit was filed. See R.C. 2305.10. However, the trial court found that the statute of limitations was tolled "by the pendency of the class action certification in MDL 1014 (Eastern District of Pennsylvania), in which [Smith & Nephew Richards] also was named as a defendant, and in which [Vaccariello] was one of the potential class members." The court relied on *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 689, 595 N.E.2d 360, 373, and *Am. Pipe & Constr. Co. v. Utah* (1974), 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713, 727. The trial court determined that the statute of limitations was stayed from the time the motion for class certification in the putative class action was filed on April 4, 1994, until it was denied on February 22, 1995. The trial court thereby denied the defendant's initial motion for summary judgment.

{¶ 4} The court of appeals reversed the lower court's denial of that motion for summary judgment. It relied on *Ohio Hosp. Assn. v. Armstrong World Industries, Inc.* (Apr. 6, 2000), Cuyahoga App. No. 76067, unreported, 2000 WL 354742,[2] where the same court of appeals had determined that "cross-jurisdictional class action tolling of statutes of limitations is not recognized in Ohio." Quoted in Vaccariello v. Smith & Nephew Richards, Inc. (Aug. 3, 2000), Cuyahoga App. No. 76594, unreported, 2000 WL 1060649, at *4. The cause is now before this court pursuant to the allowance of a discretionary appeal.

I

{¶ 5} In *Howard v. Allen* (1972), 30 Ohio St.2d 130, 59 O.O.2d 148, 283 N.E.2d 167, syllabus, this court stated that "R.C. 2305.19, the Ohio saving clause,

---

2. The *Ohio Hosp. Assn.* case is currently pending before this court (case No. 00-1030), with proceedings stayed pending bankruptcy determinations.

applies only to actions 'commenced or attempted to be commenced' in Ohio within the appropriate statute of limitations." The court stressed that it was following the majority rule. *Id.* at 133, 59 O.O.2d at 150, 283 N.E.2d at 169. This court has not had occasion to revisit, or even cite, *Howard* in the intervening thirty or so years.

**{¶ 6}** Much has changed since *Howard* was decided. Most notably, in *American Pipe*, the United States Supreme Court found that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." (Footnoted omitted.) *American Pipe*, 414 U.S. at 554, 94 S.Ct. at 766, 38 L.Ed.2d at 727. Since then, "the majority of states which have considered the tolling doctrine [of *American Pipe* and its progeny] have accepted it." (Footnote omitted.) Ian Gallacher, Representative Litigation in Maryland: The Past, Present, and Future of the Class Action Rule in State Court (1999), 58 Md.L.Rev. 1510, 1550.

**{¶ 7}** In *Crown, Cork & Seal Co., Inc. v. Parker* (1983), 462 U.S. 345, 352, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628, 635, the court expanded the scope of *American Pipe*, reasoning that "a tolling rule for class actions is not inconsistent with the purposes served by statutes of limitations [which are] intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." (Citations omitted.) The court also stated that blind application of statutes of limitations would frustrate "[t]he principal purposes of the class-action procedure—promotion of efficiency and economy of litigation." *Id.* at 349, 103 S.Ct. at 2395, 76 L.Ed.2d at 633.

**{¶ 8}** We note that the bulk of Ohio's class action rule, Civ.R. 23(A) through (E), is identical to the bulk of the federal class action rule, Fed.R.Civ.P. 23(a) through (e). See Staff Note to Civ.R. 23. This congruity convinces us that a class action filed in federal court serves the same purpose as a class action filed in Ohio. See *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 15 OBR 439, 442, 473 N.E.2d 822, 825 (court required "to focus on the efficiency and economy elements of the class action"). See, also, *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 96, 521 N.E.2d 1091, 1096; *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 80, 694 N.E.2d 442, 454.

**{¶ 9}** We conclude that it is more important to ensure efficiency and economy of litigation than to rigidly adhere to the rule of *Howard*. Whether a class action is filed in Ohio or the federal court system, the defendant is put on notice of the substance and nature of the claims against it. Therefore, allowing the filing of a class action in the federal court system to toll the statute of limitations in Ohio does not defeat the purpose of the statute.

**{¶ 10}** Despite our heavy reliance on the language and reasoning of the United States Supreme Court, we reach our conclusion independently, without regard to the federal cases discussed as binding on this court. See *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

**{¶ 11}** We hold that the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. We modify *Howard* to the extent that it conflicts with this holding.

**{¶ 12}** In *Portwood v. Ford Motor Co.* (1998), 183 Ill.2d 459, 465, 233 Ill.Dec. 828, 830, 701 N.E.2d 1102, 1104, the Supreme Court of Illinois rejected cross-jurisdictional tolling "because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule," thereby burdening Illinois' court system. We are not persuaded that this is a realistic potential problem.

**{¶ 13}** Our holding today merely allows a plaintiff who could have filed suit in Ohio irrespective of the class action filed in federal court in Pennsylvania to rely on that class action to protect her rights in Ohio. To do otherwise would encourage all potential plaintiffs in Ohio who might be part of a class that is seeking certification in a federal class action to file suit individually in Ohio courts to preserve their Ohio claims should the class certification be denied. The resulting multiplicity of filings would defeat the purpose of class actions. Our holding does not invite plaintiffs who have no relationship to Ohio to file suit in our courts. Instead, only those plaintiffs who

4

could have otherwise filed suit in Ohio will be able to file suit pursuant to the tolling rule we espouse today.

{¶ 14} The federal class action in this case failed "otherwise than upon the merits." R.C. 2305.19. Therefore, Vaccariello had one year from the date of the denial of the class certification, February 22, 1995, to file her suit in Ohio. Since she filed on December 15, 1995, her suit is not barred by the statute of limitations.

II

{¶ 15} In the lower court, Smith & Nephew Richards filed two motions *in limine* to prevent Vaccariello from presenting testimony regarding Smith & Nephew Richards' alleged failure to warn her about the medical risks associated with the pedicle screw and the FDA regulatory status of the pedicle screw. Smith & Nephew Richards contended that such testimony would be irrelevant and prejudicial because it was under no duty to warn Vaccariello.

{¶ 16} The trial court granted the motions *in limine*, concluding that there was "no compelling reason to limit the application of the learned intermediary doctrine only to prescription drugs." The court relied on *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 149, 569 N.E.2d 875, 878. Based on this ruling, the trial court sustained Smith & Nephew Richards' second motion for summary judgment. The court of appeals affirmed this determination of the trial court.

{¶ 17} In *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831, paragraph one of the syllabus, this court stated:

"A manufacturer of an unavoidably unsafe ethical (prescription) drug is not strictly liable in tort to a consumer who has suffered injury as a result of ingesting that drug where the manufacturer has provided adequate warning to the medical profession of all potential adverse reactions inherent in the use of the drug of which the manufacturer, being held to the standards of an expert in the field, knew or should have known to exist at the time of marketing."

{¶ 18} Smith & Nephew Richards argues that the learned intermediary doctrine should be expanded to include prescription medical devices. For the reasons that follow, we agree.

{¶ 19} The learned intermediary doctrine is codified at R.C. 2307.76(C). This codification does not thereby abrogate the common law. *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, 287, 677 N.E.2d 795, 798-799. In *Carrel*, we stated that "in the absence of language clearly showing the intention to supersede the common law, the existing common law is not affected by the statute, but continues in full force." *Id.* at 287, 677 N.E.2d at 798. We further stated that " '[t]here is no repeal of the common law by mere implication.' " *Id.* at 287, 677 N.E.2d at 798-799, quoting *Frantz v. Maher* (1957), 106 Ohio App. 465, 472, 7 O.O.2d 209, 213, 155 N.E.2d 471, 476.

{¶ 20} After reviewing the relevant statutes, we conclude that it is possible to believe that the General Assembly may have intended to exclude prescription medical devices from the application of the learned intermediary doctrine. See R.C. 2307.71(D) and (E) ("ethical drug" and "ethical medical device" are defined separately). However, we also conclude that the Revised Code does not contain a clear statement that the learned intermediary doctrine, a creature of the common law, cannot apply to prescription medical devices.

{¶ 21} We stated in *Tracy* that "[t]he rationale behind [the learned intermediary doctrine] is that the physician stands between the manufacturer and the patient as a learned intermediary. The physician has the duty to know the patient's condition as well as the qualities and characteristics of the drugs or products to be prescribed for the patient's use. The physician is in the best position, therefore, to balance the needs of patients against the risks and benefits of a particular drug or therapy, and then supervise its use. * * * The learned intermediary doctrine achieves a proper allocation of responsibility, since not all patients are alike and it is the physician who best knows the patient." *Tracy*, 58 Ohio St.3d at 149, 569 N.E.2d at

878. This rationale applies equally to prescription medical devices. Accordingly, we hold that the learned intermediary doctrine applies to prescription medical devices.

{¶ 22} "The learned intermediary doctrine does not relieve the manufacturer of liability to the ultimate user for an inadequate or misleading warning; it only provides that the warning reaches the ultimate user through the learned intermediary." *Id.* at 149-150, 569 N.E.2d at 878. We defer to the trial court's determination that "Dr. Rozen [the surgeon] was aware of the inherent medical risks and side effects of the [pedicle screw], and since the insert provided with each [pedicle screw] listed the possible adverse effects (including the pain complained of by [Vaccariello]), pursuant to the learned intermediary doctrine [Smith & Nephew Richards] discharged all duties to warn [Vaccariello]."

{¶ 23} We also defer to the trial court's determinations that "[Smith & Nephew Richards] provided FDA-approved information concerning the [pedicle screw's] FDA regulatory status to Dr. Rozen" and that "[e]ach [pedicle screw/Rogozinski System] which Dr. Rozen implanted into [Vaccariello] was accompanied by a package insert whose language was reviewed and cleared by the FDA prior to distribution by [Smith & Nephew Richards]."

{¶ 24} Accordingly, we affirm the court of appeals' judgment upholding the trial court's granting of Smith & Nephew Richards' motions *in limine*. Because this issue is dispositive, we also affirm the court of appeals' decision upholding the trial court's granting of Smith & Nephew Richards' second motion for summary judgment.

*Judgment affirmed*
*as modified.*

F.E. SWEENEY, J., concurs.

MOYER, C.J., and COOK, J., concur in judgment only.

DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

_____

**COOK, J., concurring in judgment only.**

**{¶ 25}** I agree that appellee Smith & Nephew Richards, Inc. was entitled to judgment in its favor. But my reasoning differs from the lead opinion's reasoning: Vaccariello's Ohio action was time-barred based on our precedent set forth in *Howard v. Allen* (1972), 30 Ohio St.2d 130, 59 O.O.2d 148, 283 N.E.2d 167. And deciding that the action was time-barred removes other substantive issues from the case. I would therefore reserve the question whether the learned intermediary doctrine should apply to prescribed medical devices.

I

**{¶ 26}** As a preliminary matter, the unusual wording of today's judgment—"Judgment affirmed as modified"—warrants comment. The lead opinion notes that the trial court denied appellee's first motion for summary judgment (based on statute-of-limitations grounds), but granted appellee's second motion for summary judgment (after granting the motions in *limine* related to the learned intermediary doctrine). The court of appeals, in turn, phrased its judgment as follows: "This cause is affirmed in part and reversed in part for further proceedings consistent with the opinion herein." The wording of this latter judgment, however, incorrectly characterized the court of appeals' disposition of this case.

**{¶ 27}** Civ.R. 58(A) provides: "Subject to the provisions of Rule 54(B), * * * upon a decision announced, * * * the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal." This rule contemplates a difference between a decision and a judgment. Civ.R. 54(A) underscores this distinction, providing that a judgment "includes a decree and any order from which an appeal lies as provided in section 2505.02 of the Revised Code." This court has long recognized that "[t]he denial of a motion for summary judgment * * * generally does not constitute a final order under R.C. 2505.02." *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292, 1294. See, also, *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23, 37 O.O.2d 358, 222 N.E.2d 312. In this case, then, the trial court's denial of appellee's first motion for

summary judgment was not the trial court's *judgment*, but only an interlocutory *decision* that merged into the final judgment in favor of appellee.

{¶ 28} By overruling Vaccariello's assignment of error related to appellee's second motion for summary judgment, the appellate court properly affirmed the ultimate judgment of the trial court. This affirmance meant that the *judgment* of the trial court remained unchanged, despite the fact that the court of appeals found a *decision* of that court erroneous in appellee's cross-appeal. Notably, appellee never sought to change the judgment of the trial court. Rather, by cross-appealing the denial of the first summary judgment motion, appellee sought to "change * * * an interlocutory ruling merged into the [trial court's] judgment" *only* "in the event the judgment or order may be reversed or modified"—which means only in the event that Vaccariello prevailed in her ultimately unsuccessful appeal. App.R. 3(C)(1). Because the court of appeals affirmed the judgment of the trial court, for whatever reason, the appellate court should have properly described its disposition only as an affirmance. Cf. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174 ("a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof"). The fact that the court of appeals determined that the trial court erred in not granting the first motion for summary judgment provided only an additional ground for the trial court's judgment in favor of appellee. It did not, however, change the nature of the judgment or require a reversal of any part of that judgment.

{¶ 29} Accordingly, the court of appeals should have described its disposition of the cause as "judgment affirmed." Today's lead opinion, by phrasing its disposition as "Judgment affirmed *as modified*" (emphasis added), implicitly recognizes the erroneous dual nature of the court of appeals' disposition. My concurring in judgment only is based on my understanding that today's judgment is intended to correct the court of appeals' wording: Both this court and the lower appellate court have simply affirmed the judgment of the trial court, albeit for varying reasons.

II

**{¶ 30}** A majority of this court cite United States Supreme Court precedent to support the determination that a dismissed federal class action tolls the running of the applicable Ohio statute of limitations for Ohio plaintiffs, thus preserving otherwise stale claims. At the same time, the majority stresses that it reaches its holding independent from that authority, which it deems not binding on this court. I agree that the United States Supreme Court's *American Pipe/Crown, Cork & Seal/Chardon* rule—that federal class actions toll federal statutes of limitations and potentially state statutes of limitations applicable in federal courts—does not dictate the result here. See *Am. Pipe & Constr. Co. v. Utah* (1974), 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713; *Crown, Cork & Seal Co., Inc. v. Parker* (1983), 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628; *Chardon v. Fumero Soto* (1983), 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74. Cf. *Bd. of Regents v. Tomanio* (1980), 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440. But, see, *Adams Pub. School Dist. v. Asbestos Corp., Ltd.* (C.A.8, 1993), 7 F.3d 717, 719 (diversity case in which court viewed *American Pipe* broadly, stating that in addition to state-sanctioned tolling, "we view the federal interest here as sufficiently strong to justify tolling in a diversity case when the state law provides no relief"). Although cognizant of the view that the federal class action tolling practice preempts conflicting state law, I also agree with the majority's assertion that the practice is not binding on states. See, generally, Lowenthal & Feder, The Impropriety of Class Action Tolling for Mass Tort Statutes of Limitations (1996), 64 Geo.Wash.L.Rev. 532 (discussing view that Fed.R.Civ.P. 23 compels tolling of state claims via the Rules Enabling Act). See, also, *Wade v. Danek Med., Inc.* (C.A.4, 1999), 182 F.3d 281, 288-290. But I cannot agree that the majority's independent grounds— *i.e.*, Ohio law—mandates cross-jurisdictional tolling.

**{¶ 31}** To justify its decision to modify *Howard*, today's majority quotes a law review article as stating that " 'the majority of states which have considered the tolling doctrine [of *American Pipe* and its progeny] have accepted it.' " The *full quote*, however, belies the slant of the abbreviated quote offered by the majority opinion. The law review actually counsels:

"*Although* the majority of states which have considered the tolling doctrine have accepted it, *the rule is not without its critics and should not be blindly adopted*." (Footnotes omitted and emphasis added.) Gallacher, Representative Litigation in Maryland: The Past, Present, and Future of the Class Action Rule in State Court (1999), 58 Md.L.Rev. 1510, 1550-1551.

**{¶ 32}** Moreover, the Supreme Court of Illinois disagrees with the contention that a majority of jurisdictions that have addressed the issue have favored cross-jurisdictional tolling:

"Although plaintiffs assert that the majority of courts which have considered this issue have chosen to adopt cross-jurisdictional tolling to preserve claims under state law, our research indicates precisely the opposite. * * * At any rate, it is apparent that very few states to date have even considered the issue of cross-jurisdictional tolling, let alone adopted it." (Citations omitted.) *Portwood v. Ford Motor Co.* (1998), 183 Ill.2d 459, 465-466, 233 Ill.Dec. 828, 701 N.E.2d 1102, 1104, certiorari denied (1999), 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53.

**{¶ 33}** Even assuming *arguendo* that a majority of those states that have addressed the issue do favor cross-jurisdictional tolling, it is unclear why the majority notes this fact when the majority purports to base its decision on Ohio law. The holdings of other jurisdictions would be of little use, then, without an explication of the rationale behind those decisions. The majority does not, for example, examine whether analogous rules enacted in those jurisdictions permit cross-jurisdictional tolling. If the jurisdictions do not have such rules, then the majority's reference to these unnamed jurisdictions is puzzling. In the absence of other jurisdictional rules favoring cross-jurisdictional tolling, we are left with only the possibilities that those jurisdictions view Fed.R.Civ.P. 23 or federal common law as mandating such tolling—propositions that the majority rejects by "regarding the federal cases discussed as [not] binding on this court."

**{¶ 34}** Regardless of the actual number of jurisdictions that favor such tolling, *stare decisis* and judicial restraint counsel against it. Cross-jurisdictional tolling is a

public policy matter involving issues of a forum's control over its own judicial proceedings. The Supreme Court of Illinois explained:

"[B]ecause state courts have no control over the work of the federal judiciary, we believe it would be unwise to adopt a policy basing the length of Illinois limitation periods on the federal courts' disposition of suits seeking class certification. State courts should not be required to entertain stale claims simply because the controlling statute of limitations expired while a federal court considered whether to certify a class action." *Portwood*, 183 Ill.2d at 466, 233 Ill.Dec. 828, 701 N.E.2d at 1104. See, also, *Wade*, 182 F.3d at 288 (diversity action in which court of appeals held that Virginia would not adopt a cross-jurisdictional tolling rule).

{¶ 35} I agree, and our reasoning in *Howard* buttresses this rationale. *Howard* interpreted a codified policy choice that confined a statute-of-limitations exception to actions commenced or attempted to be commenced *in the state of Ohio*. *Howard*, 30 Ohio St.2d at 135, 59 O.O.2d at 151, 283 N.E.2d at 170 (interpreting R.C. 2305.19 as restricted "to suits * * * commenced or attempted to be commenced in Ohio prior to the running of Ohio's statute of limitation, * * * in the absence of some manifest legislative intent to the contrary"). Underlying this policy choice is the premise that states "simply ha[ve] no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state." (Footnote omitted.) *Wade*, 182 F.3d at 287 (deciding issue under Virginia law); *Maestas v. Sofamor Danek Group, Inc.* (Tenn.2000), 33 S.W.3d 805, 808. Cf. *Vaught v. Showa Denko K.K.* (C.A.5, 1997), 107 F.3d 1137, 1147 (holding that "the federal interest in [class action tolling] does not trump the Texas tolling rule," given that the rule's enforcement of statutes of limitations is of "considerable importance to Texas").

{¶ 36} As this court stated in *Howard*, statutes of limitations " 'represent a public policy about the privilege to litigate.' * * * The Ohio saving clause, R.C. 2305.19, being part of Ohio's scheme of limitations, is within this policy-making prerogative of the General Assembly." *Id.*, 30 Ohio St.2d at 137-138, 59 O.O.2d at

152, 283 N.E.2d at 171, quoting *Chase Securities Corp. v. Donaldson* (1945), 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635. Although a class action filed in federal court may indeed serve the same purpose as a class action filed in Ohio, the weight Ohio assigns to the efficiency and economy of litigation in her own courts versus those courts in distinct jurisdictions is a public policy choice. Cf. *Vaught*, 107 F.3d at 1147. Determining the *soundness* of that public policy for Ohioans is properly the role of the General Assembly. Because the General Assembly has not altered the codified public policy that this court interpreted in *Howard*—there has been no "manifest legislative intent" contrary to *Howard*—*stare decisis* ought to dictate our decision here. Nonetheless, today's majority sets forth a public policy determination without presenting a legitimate reason for being able to do so and without discussing in depth the language of the statute of limitations or savings statutes it purports to address.

III

{¶ 37} For the foregoing reasons, I agree with the court of appeals that the filing of the failed class action did not toll the statute of limitations in this case; Vaccariello's claim was time-barred. Because dismissal on the basis of the statute of limitations moots all other issues, I express no opinion here on whether the learned intermediary doctrine applies to prescribed medical devices.

MOYER, C.J., concurs in the foregoing opinion.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 38} I concur with the syllabus and the discussion in the opinion pertaining thereto. I respectfully dissent from the discussion in the opinion involving the issue of the learned intermediary doctrine and the ultimate judgment of the majority. If the majority is going to, in effect, ignore R.C. 2307.71(D) and (E) and the history surrounding those sections, then, I believe, the discussion should be more than just cursory. I would reverse the judgment of the court of appeals. Because the majority does not do so, I respectfully dissent.

RESNICK, J., concurs in the foregoing opinion.

_____

**LUNDBERG STRATTON, J.**, **concurring in part and dissenting in part.**

{¶ 39} I respectfully dissent from the syllabus. I do not agree that the filing of a class action in either an Ohio or federal court automatically tolls the statute of limitations in Ohio for putative members of the class who subsequently file an action in Ohio. Today's opinion opens Ohio's doors to a potential flood of stale claims from federal court actions and actions in other state courts. Since most states do not allow cross-jurisdictional tolling, Ohio will become the new dumping ground for any rejected claims of a potential class member located in Ohio. This will place a heavy burden upon an already overloaded court system. Notwithstanding the lack of jurisdiction here, however, I nevertheless concur with the lead opinion on the learned intermediary doctrine.

I

{¶ 40} Vaccariello contends that the federal class action filed in the Eastern District of Pennsylvania in which Smith & Nephew Richards was also named a defendant effectively tolled Ohio's statute of limitations in this action. Otherwise, Vaccariello essentially concedes, her Ohio action is barred by the applicable statute of limitations. In support of her position, Vaccariello relies on the class action tolling doctrine set forth by the United States Supreme Court in *Am. Pipe & Constr. Co. v. Utah* (1974), 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, and later expanded in *Crown, Cork & Seal Co., Inc. v. Parker* (1983), 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628.

{¶ 41} In *American Pipe*, the court held that the commencement of a class action suit in federal district court tolls the running of the statute of limitations for all purported members of the class who timely move to intervene in the federal action after the court has denied class certification. *Id.*, 414 U.S. at 553, 94 S.Ct. at 766, 38 L.Ed.2d at 726. *American Pipe* involved a proposed class action based upon violations of federal antitrust law. The case was timely filed in federal district court in Utah in May 1969. After the court denied class certification because of lack of numerosity, several

putative class members sought to intervene as plaintiffs in the action. The federal district court denied intervention, concluding that the limitation period had run as to them. The court of appeals reversed, and the United States Supreme Court affirmed. The court based its decision upon the efficiency and economy that a class action was designed to promote. *Id*. at 555-556, 94 S.Ct. at 767, 38 L.Ed.2d at 728. The court reasoned that commencement of the original class action in federal court satisfied the purpose of the statute of limitations by informing and notifying defendants of the claims and the existence of those who might participate in the suit. *Id*. at 554-555, 94 S.Ct. at 767, 38 L.Ed.2d at 727. To hold otherwise, the court said, would frustrate the function of a class action and those who rely on the class action to protect their interests. *Id*. at 553, 94 S.Ct. at 766, 38 L.Ed.2d at 726.

{¶ 42} The court later expanded its holding in *Crown, Cork & Seal* to permit tolling for all putative class members who file separate actions in the federal system, not just those seeking to intervene in the original action. Again, the court reasoned that suspending the statute of limitations during the pendency of the federal class action was consistent with the purposes of statutes of limitations. The court said that unless the statute of limitations was tolled for all putative members of the class, class members could not rely on the class action to protect their rights in the event class certification was denied. Members would have to take affirmative action, such as filing an individual lawsuit or moving to intervene in the federal class action. The court concluded that this would result in a multiplicity of actions, something that a class action is supposed to prevent. *Id*., 462 U.S. at 350-351, 103 S.Ct. at 2396, 76 L.Ed.2d at 634.

{¶ 43} Therefore, *American Pipe* involved tolling the statute of limitations for an individual action after dismissal of a class action when *both* cases were brought in the federal court system. I do not believe that Ohio needs to adopt a federal rule for class action tolling because Ohio has its own tolling rules. In addition, I do not believe that it is prudent to apply a federal class action tolling rule *across* jurisdictions. A class action filed in a court system outside Ohio should not toll the Ohio statute of limitations

so that an otherwise stale suit may be filed in an Ohio court. Ohio law does not support cross-jurisdictional class action tolling, and it would not promote the purposes of Ohio's statutes of limitations.

II

**{¶ 44}** Statutes of limitations are exclusively matters of state law. See *Kerper v. Wood* (1891), 48 Ohio St. 613, 622, 29 N.E. 501, 502. They are legislatively created periods of time in which an injured party may assert a claim in a court in Ohio. Once expired, the statute forecloses the claim and provides repose for potential defendants. *Liddell v. SCA Serv. of Ohio, Inc.* (1994), 70 Ohio St.3d 6, 10, 635 N.E.2d 1233, 1237. "The rationale underlying statutes of limitations is fourfold: to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconveniences engendered by delay, specifically the difficulties of proof present in older cases." *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 88, 4 OBR 335, 339, 447 N.E.2d 727, 731. Statutes of limitations require a plaintiff to exercise reasonable diligence in presenting a claim and allow courts to concentrate on relatively current disputes.

**{¶ 45}** Under certain circumstances, however, there may be a need to toll the statute of limitations. This may occur when a plaintiff's right to sue outweighs the policy concerns of protecting defendants from stale claims. *Burnett v. New York Cent. RR. Co.* (1965), 380 U.S. 424, 428, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941, 945. Tolling rules are also a matter of state, not federal, law. See *Hamilton Cty. Bd. of Edn. v. Asbestospray Corp.* (Feb. 14, 1995), Sixth Circuit No. 90-6374, unreported, at 3.

**{¶ 46}** One form of tolling suspends the limitations period during the time that a plaintiff is unable to initiate suit. For example, Ohio law tolls or suspends the statute of limitations for persons who are minors and when the plaintiff is under disability such as being of unsound mind. R.C. 2305.16. A statute of limitations is also suspended when circumstances beyond a plaintiff's control prevent him or her from filing suit during the limitations period. This occurs when the defendant is outside the jurisdiction

and beyond the reach of process. R.C. 2305.15(A). The General Assembly has elected not to enact a tolling rule that applies to class actions.

{¶ 47} Ohio law provides for another form of tolling that extends, rather than suspends, a statute of limitations. R.C. 2305.19, known as the savings statute, gives a plaintiff who timely filed an action that was dismissed on procedural grounds a specific amount of time in which to file a second action. If a plaintiff has commenced or attempted to commence an action in Ohio, and the plaintiff fails otherwise than on the merits, and if the applicable limitation period for the action has expired, R.C. 2305.19 permits the plaintiff to commence a new action (provided that it is the same as the original action) within one year. R.C. 2305.19. The savings statute applies only if an attempt has been made to commence an action in Ohio courts, whether individually or in a class action. See *Howard v. Allen* (1972), 30 Ohio St.2d 130, 133-134, 59 O.O.2d 148, 150, 283 N.E.2d 167, 169; *Pruitt v. Haley* (Feb. 20, 1998), Greene App. No. 97-CA-60, unreported, 1998 WL 71787 (discussing effect of dismissal of class action).

{¶ 48} The savings statute is Ohio's tolling mechanism that is available for putative class members who want to file an individual action when class certification is denied in a proposed class action filed in Ohio. Had the class action been commenced in Ohio instead of Pennsylvania, once the trial court denied class certification, Vaccariello would have had one year to file an individual action. However, suit in another state cannot toll an Ohio statute of limitations being applied to an action filed in an Ohio court. *Howard v. Allen*, 30 Ohio St.2d at 134, 59 O.O.2d at 150, 283 N.E.2d at 169. The savings statute does not apply in this case because suit was not originally commenced here.

{¶ 49} Although the savings statute does not apply here, the majority's analysis, nevertheless, looks to *Howard*. The majority concludes that "[m]uch has changed since *Howard* was decided," then compares *Howard* and the savings statute to *American Pipe* and the federal tolling doctrine. The majority makes this leap without explaining how *Howard* no longer applies, or how the passage of time has affected the court's reasoning in *Howard*. Ohio has rules for tolling the statute of limitations. They

do not apply in this case. It is inconsistent with Ohio law to adopt a rule similar to that espoused in *American Pipe*.

III

{¶ 50} In addition, I believe that a judicially created cross-jurisdictional tolling rule, based upon the rationale of *American Pipe,* frustrates the purposes underlying Ohio's statutes of limitations. After today, Ohio's statutes of limitations may be determined according to a court case pending in a foreign jurisdiction over which Ohio courts have no control. Calculation of Ohio's statute of limitations will be completely dependent upon the resolution of claims in another jurisdiction where litigation procedures may differ significantly. It may be many years before the issue of class certification is decided. Nevertheless, Ohio will be forced to toll its statute of limitations during the entire period, then be willing to entertain a putative member's individual action based upon the same cause of action following dismissal of the class action. I view this as contrary to our policies of encouraging prompt prosecution of causes of action and suppressing of stale claims. It would augment instead of avoid the inconveniences in litigation engendered by delay, and it would be patently unfair to defendants.

{¶ 51} *American Pipe* created a federal rule to be applied in a class action filed in federal court involving a federal cause of action. The United States Supreme Court tolled the applicable statute of limitations with respect to filing in another *federal* court. There is, however, a difference between applying a tolling rule within the same court system and a cross-jurisdictional tolling that the majority applies.

{¶ 52} The federal court system is one uniform court system. If a class action is dismissed from a federal district court in New Mexico and the putative plaintiff files an individual action in federal district court in Indiana, it is comparable to a class action being dismissed in Cuyahoga County and the putative plaintiff filing an individual action in Hamilton County. Perhaps this would result in fewer filings because putative plaintiffs would not need to intervene or file protective suits in the same system prior to a decision on class certification in order to protect their rights. However, I do not

18

agree that those reasons similarly apply if a tolling rule is applied across jurisdictional lines. In fact, a cross-jurisdictional class action tolling rule will encourage the filing of stale claims in Ohio courts as plaintiffs from across the country elect to file in Ohio because of such a liberal tolling rule.

{¶ 53} According to the majority's cross-jurisdictional tolling rule, any putative class member, if class certification is ultimately denied in a foreign jurisdiction, may elect to file a suit in Ohio. I view this rule as inviting plaintiffs to forum-shop, a practice that this court does not promote and does not wish to encourage.

IV

{¶ 54} The majority ignores the numerous other states that have considered this issue and declined to adopt the *American Pipe* rule. See *Thelen v. Massachusetts Mut. Life Ins. Co.* (D.Md.2000), 111 F.Supp.2d 688, 694; *Maestas v. Sofamor Danek Group, Inc.* (Tenn.2000), 33 S.W.3d 805, 807-808; *Senger Bros. Nursery, Inc. v. E.I. Dupont De Nemours & Co.* (M.D.Fla.1999), 184 F.R.D. 674, 682; *Wade v. Danek Med., Inc.* (C.A.4, 1999), 182 F.3d 281, 287; *Portwood v. Ford Motor Co.* (1998), 183 Ill.2d 459, 465-466, 233 Ill.Dec. 828, 701 N.E.2d 1102, 1104; *Barela v. Showa Denko, K.K.* (Feb. 28, 1996), D.N.M. No. 93-1469, unreported, 1996 WL 316544; *Bell v. Showa Denko, K.K.* (Tex.App.1995), 899 S.W.2d 749, 757; *In re "Agent Orange" Prod. Liab. Litigation: Hogan v. Dow Chem. Co.* (C.A.2, 1987), 818 F.2d 210, 213. In particular, the majority rejected the analysis of the Illinois Supreme Court in *Portwood* that is particularly instructive on the disadvantages associated with a cross-jurisdictional class action tolling rule.

{¶ 55} Ohio courts are not bound by *American Pipe* and I am unwilling to agree to a rule that equitably tolls Ohio's statute of limitations during proceedings that are filed in another court system. Ohio law is clear. For an action to be commenced in Ohio, it must be filed prior to the expiration of Ohio's statute of limitations. *Howard v. Allen,* 30 Ohio St.2d at 133-134, 59 O.O.2d at 150, 283 N.E.2d at 169. The General Assembly has enacted a limited number of tolling statutes that create exceptions to

Ohio's statutes of limitations.  Foreign actions do not toll the running of the statute of limitations in Ohio.  *Id.*

{¶ 56} I believe it is sound policy for the tolling of a limitation period to remain a legislative, not a judicial, consideration.  *Cincinnati v. Thomas Soft Ice Cream, Inc.* (1977), 52 Ohio St.2d 76, 77, 6 O.O.3d 277, 278, 369 N.E.2d 778, 780.  Therefore, I would hold that the filing of a class action in a jurisdiction outside Ohio does not toll the statute of limitations in Ohio for all putative members of the class who subsequently file an action in Ohio.  I would affirm the judgment of the court of appeals.

_____

*Michael J. O'Shea Co., L.P.A.,* and *Michael J. O'Shea*, for appellants.

*Davis & Young* and *Martin J. Murphy*, for appellee.

_____