DECISION
{¶ 1} This matter is before the court pursuant to our granting of a motion for reconsideration filed by defendant-appellee/cross-appellant, Fleet Bank, N.A. ("Fleet Bank").
 {¶ 2} The facts of this matter are set forth in our prior decision in this appeal, Fed. Mgt. Co. v. Coopers Lybrand,
Franklin App. No. 03AP-204, 2004-Ohio-4785 ("Federated II"), and we will reiterate those facts here only to the extent necessary for our consideration of this application for reconsideration.
 {¶ 3} Plaintiffs-appellants/cross-appellees in this matter, Federated Management Company and others, are institutional investment advisers who brought this action in a representative capacity on behalf of clients who sustained losses after investing in a 1994 public offering of indebtedness issued by Mid-American Waste Systems, Inc. ("MAW"). The defendants included various parties connected with the note offering, and Fleet Bank is present as successor by merger to National Westminster Bank USA, which provided credit facilities and advice to MAW prior to and after the note offering of 1994. Appellants sought recovery under, inter alia, R.C. 1707.41, a provision of the Ohio Securities Act under which persons damaged by false or misleading information disseminated in connection with the issuance of an investment in securities may recover damages from persons connected with the issuance of the securities:
(A) In addition to the other liabilities imposed by law, any person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts, unless the offerer or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the omitted facts to be not material.
 {¶ 4} An earlier decision of our court in a prior appeal held that Fleet Bank was potentially liable under the statute because there was a material issue of fact as to whether it had received "profits," principally in the form of fees connected with the underwriting, and may have been aware of the falsity of some statements contained in the prospectus for the notes. Fed. Mgt.Co. v. Coopers Lybrand (2000), 137 Ohio App.3d 366
("Federated I").
 {¶ 5} Various other claims and parties having fallen by the wayside, the matter came again before this court in FederatedII, pursuant to a grant of summary judgment in favor of Fleet Bank on a considerably narrow question: Whether a plaintiff presenting a claim for damages under R.C. 1707.41 may recover, in addition to the price of the securities, pre- and post-judgment interest to represent the time value of money in compensation for income foregone due to the participation in the failed investment. We reversed the trial court, finding that a plaintiff may recover the time value of money in pursuing a claim under R.C. 1707.41. We further found that appellants' claims in the present case potentially exceeded their recovery from other defendants and sources if interest were applied above the original investment, and we remanded the matter to the trial court for further proceedings. In our disposition of the case, however, we declined to address three assignments of error brought on conditional cross-appeal by Fleet Bank, seeking reversal of the trial court's refusal to grant summary judgment in favor of Fleet Bank in separate motions for summary judgment brought on alternative grounds to the pre-judgment interest theory. Based principally upon our decision in Lelux v.Chernick (1997), 119 Ohio App.3d 6, we held that denial of a motion for summary judgment, in the absence of an adverse judgment suffered in the trial court by the moving party, would not constitute a final appealable order.
 {¶ 6} However, our decision in Lelux has been effectively superseded by the Ohio Supreme Court's subsequent decision inVaccariello v. Smith Nephew Richards, Inc. (2002),94 Ohio St.3d 380. In Vaccariello, the Supreme Court clearly contemplated review by an appellate court under procedural circumstances that fit squarely with the procedural posture of the case before us: A denial of summary judgment by a trial court, followed by an ultimate grant of summary judgment in favor of the same moving party on a later, separate motion on different theories. Where the appellate court found that the grant of summary judgment on the final summary judgment motion was incorrect, the Supreme Court found, the appellate court could nonetheless affirm the judgment in favor of the moving party on the basis that the trial court had erred in denying an earlier summary judgment motion made on alternative grounds. We accordingly have granted reconsideration in this matter and will proceed to consider whether the trial court in the present case erred in denying summary judgment for Fleet Bank on the alternative theories presented in earlier motions by Fleet Bank. Since we have reversed the trial court's grant of summary judgment in favor of Fleet Bank on the pre-judgment interest issue, we proceed to address Fleet Bank's three assignments of error on conditional cross-appeal, asserting error in denying Fleet Bank's earlier motions for summary judgment on alternative theories:
I. The Trial Court Erred in Denying the Motion of Defendant Fleet Bank, N.A. for Summary Judgment Based on Res Judicata, App. 0618, by its October 18, 2001 Decision and Entry Overruling Defendant's Motion for Summary Judgment Filed on March 28, 2001 and Granting Plaintiff's Cross Motion for Summary Judgment Filed on April 27, 2001. App. 0679.
II. The Trial Court Erred in Denying the Motion of Defendant Fleet Bank, N.A. for Summary Judgment on Aftermarket Claims, App. 0714, by its January 10, 2003 Decision and Entry. App. 0822.
III. The Trial Court Erred in Denying the Motion of Defendant Fleet Bank, N.A. for Summary Judgment on the Ground that Plaintiffs Cannot Establish Loss Causation, App. 0724, by its January 10, 2003 Decision and Entry. App. 0822.
 {¶ 7} Again, this aspect of the matter represents a review from grant or denial of a motion for summary judgment. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support his or her claims. Id.
 {¶ 8} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579,588;Bard v. Society Natl. Bank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v.Shelly Co. (1995), 106 Ohio App.3d 440, 445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard.
 {¶ 9} Fleet Bank's first assignment of error asserts that the trial court erred in denying its motion for summary judgment asserting that res judicata, based upon the prior decisions of this and other courts, barred recovery by appellants against Fleet Bank because these claims should have been brought in MAW's bankruptcy proceedings in the United States Bankruptcy Court for the district of Delaware. Fleet Bank asserts that this court's decision in a companion case, Fed. Mgt. Co. v. Latham Watkins
(2000), 138 Ohio App.3d 815 ("Latham"), applied res judicata principles to similarly situated parties to bar recovery.
 {¶ 10} During the course of the bankruptcy proceedings involving MAW, on January 22, 1998, approximately two months after appellants had commenced the present action against Fleet Bank and other defendants in the Franklin County Court of Common Pleas, Fleet Bank filed a motion in Delaware Bankruptcy Court seeking an order from the bankruptcy judge enjoining appellants from pursuing the present state law action. Fleet Bank asserted that language in MAW's "amended joint liquidating plan of reorganization" in the bankruptcy proceedings — language to which appellants had agreed — barred the other claims, including the R.C. 1707.41 claim that is the sole remaining one before us.
 {¶ 11} Appellants, Fleet Bank, and MAW participated in briefing and hearings on the question of whether the state-law claims were barred, and the bankruptcy court eventually held that they were not:
At no time during the proceedings relating to Fleet's Motion, and at no time during MAW's bankruptcy case, did this Court consider or rule upon the factual or legal issues being raised in the Ohio Action. Such issues were not required to be raised by the parties and were not considered in connection with, or necessary for the resolution of, any matters brought before this Court.
* * *
* * * Fleet's Motion is denied to the extent that it seeks to enjoin or prevent in any way prosecution of the Ohio Claims or similar claims.
In re Mid-American Waste Systems, Inc. (Bankr.Ct.Del. 1998), No. 97-104 (slip opinion) at ¶ 174, 178. The court accordingly entered its order as follows:
For the reasons set forth in the Court's Findings of Fact and Conclusions of Law Regarding the Intent and Effect of Article XII.E of the Amended Joint Liquidating Plan of Reorganization of Mid-American Waste Systems, Inc. and Subsidiaries of even date herewith, the Motion of Fleet Bank, N.A. to Enforce the Confirmation Order and Confirmed Plan (1) to Permanently Enjoin Certain Subordinated Note Holders from Pursuing Certain Claims Against Fleet Bank, N.A., (2) to Enforce the Indemnification Obligation of the Debtors to Fleet Bank, N.A., and (3) to Fully Fund an Appropriate Reserve Prior to Any Further Distributions Under the Confirmed Plan (Doc. # 668) is DENIED as to its request to enjoin the Subordinated Note Holders from the prosecution of any claims against Fleet Bank, N.A., including the claims asserted against Fleet Bank, N.A. in the Second Amended Complaint in the action pending in the Court of Common Pleas, Franklin County, Ohio, entitled Federated Management Company, et al. v.Coopers Lybrand, et al., Case No. 97CVH-01-2196.
 {¶ 12} Pursuant to the doctrine of res judicata, an existing final judgment or decree between parties to litigation or their privies is conclusive as to all claims that were or might have been litigated in the first lawsuit. Rogers v. Whitehall
(1986), 25 Ohio St.3d 67.
A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. The prior judgment is resjudicata as between the parties or their privies. (Paragraph No. 1 of syllabus of Norwood v. McDonald, 142 Ohio St. 299, approved and followed.)
Whitehead v. Genl. Tel. Co. (1969), 20 Ohio St.2d 108, paragraph one of the syllabus.
 {¶ 13} Res judicata will apply between federal court and state court judgments. Rogers at syllabus. Proceedings in federal bankruptcy court, including a final bankruptcy plan confirmed by the bankruptcy court, have the effect of a judgment rendered by a state or federal district court for res judicata purposes. Jungkunz v. Fifth Third Bank (1994),99 Ohio App.3d 148,151. All participants in a bankruptcy proceeding, not only the formally named parties, may be barred by res judicata from re-litigating matters that could have been raised in the bankruptcy proceedings. In re Micro-Time Mgt. Systems, Inc.
(C.A.6, 1993), 983 F.2d 1067. Creditors in a bankruptcy proceeding are considered "parties" for res judicata purposes.Sanders Confectionery Products, Inc. v. Heller Financial, Inc.
(C.A.6, 1992), 973 F.2d 474, 481.
 {¶ 14} Because of the particularly all-encompassing nature of bankruptcy litigation, however, courts have often noted the inherent difficulty in determining the limits of claim preclusion arising out of a bankruptcy proceeding and affecting subsequent litigation:
Claim preclusion is complicated in this case not only because the instant claim involves a multifaceted factual scenario and extensive course of events, but also because the prior litigation involved an expansive and complex chapter 11 bankruptcy case. A bankruptcy case is not a discrete lawsuit. It is commenced by the filing of a petition for relief, which then provides a forum in which any number of adversary proceedings, contested matters, and claims will be litigated. Claim preclusion only bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the context of a bankruptcy case over which the court would have had jurisdiction. [FN12]
FN12. Claim preclusion would have a broad scope indeed if it barred every claim over which a bankruptcy court might have had jurisdiction. See Huls, 176 F.3d at 209 (Stapleton, J., dissenting) (noting that a broad view of claim preclusion in the bankruptcy context would likely produce "multitudinous protective filings of claims against nondebtors and the needless complication of bankruptcy confirmation proceedings").
Eastern Minerals Chemicals Co. v. Mahan (C.A.3, 2000),225 F.3d 330, 337.
 {¶ 15} Fleet Bank points out that, in our decision inLatham, this court held that res judicata from bankruptcy court proceedings in Delaware did apply. In Latham, the same plaintiffs as those now before this court asserted claims against two law firms that participated in the note offering; these defendants, as was Fleet Bank in the case before us, were creditors of MAW and participants in the bankruptcy action. Holding that claims asserted by the plaintiffs against the law firm should have been litigated, or at least raised, in the bankruptcy action, this court affirmed a summary judgment granted to the defendant law firms by the trial court on principles of res judicata. Latham at 831. Our decision was based upon an extensive review and application of res judicata principles arising out of bankruptcy cases. We found that, because the defendant law firms might have asserted claims for contribution or indemnification against MAW in the bankruptcy action, and the note-holders' Ohio lawsuit against the creditor law firms "could conceivably have any effect on the estate being administered in bankruptcy," the matter fell within the bankruptcy court's broad "related to" jurisdiction and would be barred on res judicata principles by the bankruptcy court's prior resolution of the case before it. Latham at 824, citing Halper v. Halper (C.A.3, 1999), 164 F.3d 830, 837. Essentially, we gave the broadest possible deference to the potential jurisdiction of the bankruptcy court, finding that "jurisdiction will attach on a finding of any `conceivable effect'" upon the bankruptcy estate.Latham at 826, citing Wood v. Wood (C.A.5, 1987),825 F.2d 90, 94. In doing so, however, we relied essentially upon cases in which the bankruptcy court was asked to rule upon the existence of jurisdiction over collateral actions involving creditors and third parties, rather than instances in which, after the fact, a determination of subsequent res judicata impact of the bankruptcy court action must be assessed. Kocher v. Dow Chemical Co.
(C.A.8, 1997), 132 F.3d 1225; In re Celotex Corp. (C.A.4, 1997), 124 F.3d 619; Wood; Halper; distinguishing Pacor v.Higgins (C.A.3, 1984), 743 F.2d 984. Our decision ultimately provided the following instructive analysis of a case cited by both parties for contrary propositions:
* * * Appellants point to the statement in [CoreStates Bank,N.A. v. Huls America, Inc. (C.A.3, 1999), 176 F.3d 187] that "in general, a creditor who does not raise a claim against another party to the bankruptcy proceeding cannot be precluded from later asserting a claim." Id. at 199-200. However, the court inCoreStates went on to note that "even if a creditor did not proffer an objection to a plan confirmation, it would still be precluded from bringing a later claim based on the same cause of action if a judgment in its favor on the later claim would effectively nullify the effects of the confirmation order." Id.
at 200, fn. 13, citing [Sure-Snap Corp. v. State Street Bank Trust Co. (C.A.2, 1991), 948 F.2d 869], at 874-876. Likewise, as we have previously found, appellants' claims could have had a conceivable effect on the confirmation order. In this respect, the present claims would be in contravention of the bankruptcy confirmation plan and nullified the effect of the plan to some degree. Therefore, as the trial court found, we find thatCoreStates does not support appellants' argument in this respect. All the elements of res judicata having been met, we hold that the judgment in MAW's bankruptcy bars the suit filed by appellants in the trial court against appellees.
In addition, the trial court held that given the application ofres judicata, the only way that appellants may have avoided its effect was by an express reservation of their claims against appellees in the confirmation order, citing [Micro-Time Mgt.Sys., Inc. v. Allard Fish, P.C. (C.A.6, 1993), 983 F.2d 1067]. However, appellants' only argument with regard to this finding by the trial court is that Micro-Time was inapplicable because it dealt with the debtor's obligations and that as creditors, appellants had no right to reserve any claim against another creditor in MAW's bankruptcy proceedings. Because appellants' argument refutes only the application of this theory of recovery but does not set forth any other manner by which they may avoid the application of res judicata in the present case, we will not address this issue.
Latham at 831.
 {¶ 16} In the present case, we find ourselves in a substantially different posture than this court in Latham. We have before us an explicit ruling from the bankruptcy court addressing the reorganization plan and finding that it was without effect upon plaintiffs' claims against Fleet Bank in the Ohio case. Although Fleet Bank and the attorney defendants inLatham are similarly situated with respect to the bankruptcy action (with the exception of the fact that the Latham
defendants did not participate in the specific proceedings that gave rise to the bankruptcy court's June 26, 2000 order), in the present case we have the further guidance provided by the bankruptcy court as to the scope of its orders and the impact of the plan. While it remains incumbent upon a subsequent court to determine the res judicata impact of an earlier decision, Barneyv. Holzer Clinic, Ltd. (C.A.6, 1997), 110 F.3d 1207, the explicit findings of the bankruptcy court regarding the relationship between the bankruptcy proceedings and the Ohio action weigh heavily in our consideration.
 {¶ 17} With the additional information before us provided by the bankruptcy court, we reach a different conclusion than that reached in Latham. We find that appellants' claims against Fleet Bank are not barred by res judicata, because these claims against a creditor in MAW's bankruptcy case, if brought to a successful conclusion, would not be "in contravention of the bankruptcy confirmation plan," by the bankruptcy court's own definition of the scope of that plan in the June 26, 1998 order. We accordingly find that res judicata does not bar appellants' claims, and the trial court did not err in overruling Fleet Bank's motion for summary judgment on this ground. Fleet Bank's first assignment of error on cross-appeal is overruled.[1]
 {¶ 18} Fleet Bank's second assignment of error on cross-appeal asserts that the trial court erred in overruling another motion for summary judgment, which was premised upon the assertion that "after-market purchases," i.e., purchases of notes by the plaintiffs in the open market after the initial offering, would not give rise to liability for Fleet Bank under R.C.1707.41. Fleet Bank asserts that it received no profit from such after-market sales, that this court's holding in Federated I
was that Fleet Bank's predecessor's receipt of referral fees with respect to the initial note offering constituted the "profits accruing from such sale" giving rise to liability under R.C.1707.41, and that no liability could thus attach based upon such sales.
 {¶ 19} The trial court found that Fleet Bank was not entitled on this after-market claims argument because this court specifically stated in Federated I that reasonable minds could differ as to whether alleged misinformation in the prospectus was material after the initial offering and could have influenced after-market purchase decisions. In Federated I, we addressed and decided this question, and our conclusion that a material issue of fact remained in this respect has become the law of the case:
R.C. 1707.41 makes any person who, by a prospectus, offers a security for sale or receives the profits accruing from such sale liable to any person who purchases the security relying on the prospectus, which contains false, material statements. Appellants contend that the trial court erred in arbitrarily concluding that the prospectus was immaterial one year after the Note Offering. We agree.
There is little case law on the point at issue here — how long a person may rely on a prospectus when purchasing a security. While the trial court may have been correct in noting that the area of securities is a fast-changing market and, therefore, investors are provided with 10-Rs, 10-Qs, and annual reports throughout the year, it does not necessarily follow that all information in a one-year[-]old prospectus automatically becomes immaterial. R.C. 1707.41 contains no such arbitrary rule, and this court believes that such a conclusion must be based upon the evidence in each case.
Here, there was evidence that appellants actually relied on the prospectus when making after-market purchases. There is also evidence that considering a prospectus is normal course when "revisiting" a company. There is evidence that financial information from a prospectus together with subsequent 8-Ks, 10-Ks, and 10-Qs gives an overall picture of the company.
Construing the evidence most strongly in favor of appellants, a reasonable juror could find that appellants not only relied on the prospectus in making after-market purchases, but that the reliance was reasonable as the prospectus still contained material information. Therefore, the trial court erred in barring all claims completed after May 17, 1995[,] on the basis a reasonable juror could not conclude the information contained in the prospectus was material after that date.
Federated I at 396-397.
 {¶ 20} Accordingly, this court has previously disposed of the issues raised in Fleet Bank's second assignment of error, and we will not revisit them. The second assignment of error on cross-appeal is accordingly overruled.
 {¶ 21} Fleet Bank's third assignment of error asserts that the trial court erred in overruling a motion brought for summary judgment by Fleet Bank on the basis that appellants could not establish that their losses were the proximate result of any misstatements in the prospectus — the "loss causation" argument. Fleet Bank advances this argument by, first, arguing that appellants have limited their claims to those regarding misrepresentations of MAW's landfill closure and post-closure costs, which subsequently turned out to be much higher than represented in the prospectus and contributed to MAW's financial collapse. After focusing on the landfill closure and post-closure cost facts, Fleet Bank then argues that so many negative financial and market forces contributed to MAW's collapse that no causal connection between the alleged misstatements and losses suffered by investors in the notes can be established.
 {¶ 22} Appellants vigorously dispute that their allegations of misrepresentations and omissions in the prospectus are limited to closure and post-closure landfill costs, and point to paragraphs in the complaint alleging a host of other alleged misstatements in the prospectus on a variety of aspects of MAW's affairs. Appellants further argue that they need not, under R.C.1707.41, establish that the misstatements were the sole reason for the security holder's loss, so long as it was a "significant contributing cause." Bruschi v. Brown (C.A.11, 1989),876 F.2d 1526, 1531 (interpreting federal statute governing fraudulent securities sales, Section 78[b], Title 15, U.S. Code).
 {¶ 23} The nature of a loss-causation defense in a securities case is to place a heavy burden on the moving party, if the matter is before the court on summary judgment where inferences are to be drawn in favor of the non-moving party. Provenz v.Miller (C.A.9, 1996), 102 F.3d 1478, 1492, certiorari denied (1997), 522 U.S. 808. The nature of this securities case, predictably, has generated the usual volume of documentary evidence and antithetical expert evidence. The trial court has been called upon to review the causation issue at least twice in this matter, and both times found that a material issue of fact remained with respect to the many allegations regarding misstatements in the prospectus and subsequent events related to MAW's collapse. Ultimately, Fleet Bank attempts to distill this mass of information into a bare assertion that appellants have failed to prove that other factors were not the cause of MAW's collapse beyond those matters that were allegedly inaccurately described in the prospectus. This is the type of proof-of-the-negative summary judgment argument that the Ohio Supreme Court rejected in Dresher: conclusory assertions that the non-moving party has no evidence to prove its case. Without in any way passing on the ultimate validity of appellants' claims against Fleet Bank, there is ample evidence in this case to rebut the loss-causation argument on summary judgment, a material issue of fact remains on this question for resolution at trial, and the trial court did not err in overruling Fleet Bank's motion for summary judgment on this basis. Fleet Bank's third assignment of error on cross-appeal is accordingly overruled.
 {¶ 24} In accordance with the foregoing, Fleet Bank's three assignments of error on cross-appeal are overruled. Pursuant to our reconsideration of the matter, our prior reversal of the trial court's grant of summary judgment in favor of Fleet Bank on the pre-judgment interest grounds remains undisturbed, and the trial court's earlier judgments overruling motions for summary judgment by Fleet Bank on the grounds discussed above are affirmed. The matter is remanded to the trial court for further proceedings consistent with this and prior decisions of this court.
Judgment affirmed in part, reversed in part and causeremanded.
Bowman and Sadler, JJ., concur.
[1] In so finding, we acknowledge that our conclusion is not in accord with that reached in a related case before the New York Supreme Court and affirmed on appeal to the appellate division.Truesdell v. Donaldson, Lufkin Jenrette Securities Corp.
(2001), 281 A.D.2d 334.