RANDOLPH, Appellant,

v.

GRANGE MUTUAL CASUALTY COMPANY, Appellee.

[Cite as *Randolph v. Grange Mut. Cas. Co.*, 185 Ohio App.3d 589, 2009-Ohio-6782.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–519.

Decided Dec. 22, 2009.

James Randolph, pro se.

Vorys, Sater, Seymour and Pease L.L.P., Jonathan R. Vaughn, and Kelly Jennings Yeoman, for appellee.

FRENCH, Presiding Judge.

{¶ 1} Plaintiff-appellant, James Randolph, appeals the judgment of the Franklin County Court of Common Pleas, entering summary judgment in favor of defendant-appellee, Grange Mutual Casualty Company, on Randolph's claims for interference with his rights under the Family Medical Leave Act ("FMLA"), Section 2601, Title 29, U.S.Code, and for intentional infliction of emotional distress. We affirm in part and reverse in part.

{¶ 2} Randolph initially filed an action against Grange on December 2, 2004, alleging claims for retaliation under the FMLA and intentional infliction of emotional distress, arising out of the termination of his employment by Grange on December 5, 2002. Randolph voluntarily dismissed his initial complaint without prejudice in August 2005 and refiled his action on August 2, 2006. Except for changing his FMLA claim from one of retaliation to one of interference with his rights under the FMLA, Randolph's refiled complaint is nearly identical to his initial complaint.

{¶ 3} In May 2007, Grange filed a motion for summary judgment, which the trial court granted on April 29, 2009. Randolph appeals the trial court's judgment on his FMLA claim, but he does not assign error with respect to the entry of summary judgment on his claim for intentional infliction of emotional distress. Randolph asserts the following assignments of error:

**FIRST ASSIGNMENT OF ERROR**

The trial court erred as a matter of law in applying retroactive rulemaking of the revised November 2008 FMLA regulation to events that took place prior to revised November 2008 FMLA effective date of January 2009, which impaired

the FMLA rights [Randolph] was entitle[d] to under the old rule (April 1995 FMLA regulation[) ].

## SECOND ASSIGNMENT OF ERROR

The trial court erred in not identi[f]ying that [Randolph] has a[n] FMLA claim of in[t]erference under the 1995 FMLA regulation.

## THIRD ASSIGNMENT OF ERROR

The trial court erred in not [identifying] that [Randolph] has a[n] FMLA claim of discrimination under the 1995 FMLA regulation.

{¶ 4} We review a summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary-judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711, 622 N.E.2d 1153. We must affirm the trial court's judgment if any grounds that the movant has raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 5} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 6} The FMLA entitles a qualifying employee to up to 12 weeks of unpaid leave during any 12–month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." Section 2612(a)(1)(D), Title 29, U.S.Code. A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care

facility; or (B) continuing treatment by a health care provider." Section 2611(11), Title 29, U.S.Code. An employee need not take FMLA leave all at once, but may take leave intermittently due to a single qualifying reason. *Collins v. United States Playing Card Co.* (S.D.Ohio 2006), 466 F.Supp.2d 954, 964, citing former 29 C.F.R. 825.203, 60 Fed.Reg. 2247.

{¶ 7} It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's rights under the FMLA. Section 2615(a)(1), Title 29, U.S.Code. Pursuant to Section 2617(a)(1), Title 29, U.S.Code, an employer who violates Section 2615, Title 29, U.S.Code is liable to any eligible employee affected, and Section 2617(a)(2), Title 29, U.S.Code provides individual employees a right to sue in state or federal court.

{¶ 8} There are two distinct theories of recovery under the FMLA: (1) interference, sometimes referred to as entitlement, and (2) retaliation, sometimes referred to as discrimination. Under the interference theory, " '[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA,' " and the employer's intent is not a relevant part of the analysis. *Edgar v. JAC Prods., Inc.* (C.A.6, 2006), 443 F.3d 501, 507, quoting *Arban v. W. Publishing Corp.* (C.A.6, 2003), 345 F.3d 390, 401. By contrast, under the retaliation theory, the employer's motive is relevant because retaliation claims impose liability on an employer that acts against an employee specifically because the employee invoked FMLA rights. *Edgar* at 508.

{¶ 9} Randolph's refiled complaint states only an interference claim under the FMLA. Randolph alleged that Grange, in violation of the FMLA, failed to accommodate a 30–day medical leave from June 27 through July 27, 2002, and failed to accommodate intermittent leave of one to two days per month thereafter. Before turning to the substance of Randolph's assignments of error, we briefly address the mostly undisputed facts before the trial court.

{¶ 10} Grange hired Randolph as a programmer on November 17, 1997, and promoted him to the position of application programmer on June 4, 2001. On his date of hire, Grange provided Randolph a copy of its employee handbook, which contained Grange's attendance and time policies, including policies related to FMLA leave and absenteeism and tardiness (the "absenteeism policy"). Grange's FMLA policy, in accordance with statutory requirements, allows an eligible employee up to 12 weeks of FMLA leave during any 12–month period for, inter alia, "a serious health condition which prevents [the employee] from performing the essential functions of [his or her] position." The absenteeism policy excludes "approved family medical leave" from its definition of "absence."

{¶ 11} The absenteeism policy requires an employee to report any absence and the reason for it within a half-hour of the employee's scheduled start time and

states that failure to report an absence may result in disciplinary action up to and including termination. Under the absenteeism policy, an employee with seven absences in a 12–month period is placed on "absence probation," during which the employee may have only one absence. More than one absence during the absence probation subjects an employee to termination.

{¶ 12} Randolph first requested FMLA leave in August 2001. Randolph submitted a Certification of Health Care Provider, dated August 15, 2001, stating that he was suffering from reactive depression and that, as a result, he had been unable to work from August 2 through August 16, 2001. The 2001 Certification authorized a return-to-work date of August 17, 2001. Grange approved Randolph's request for FMLA leave for that period and did not count Randolph's absence during that period toward his accrued absences under the absenteeism policy. The 2001 Certification stated that Randolph's depression would probably last longer than six months, but it did not indicate that Randolph would need to miss additional work for continuing treatment, which would consist of drug therapy and monthly doctor visits.

{¶ 13} On June 24, 2002, Randolph was placed on absence probation. During his absence probation, from June 24 through December 5, 2002, Randolph was permitted a single absence.

{¶ 14} Several days after the start of his absence probation, Randolph spoke with Human Resources Administrator Jenny Jacobs about a need for further FMLA leave. On June 28, 2002, Randolph submitted another Certification of Health Care Provider, again stating that Randolph was suffering from depression with a probable duration of more than six months. Randolph's physician stated that it would be necessary for Randolph "to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment)" from June 28 to July 27, 2002. The 2002 Certification states: "If the patient will be absent from work * * * because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any." Randolph's physician responded, "1 or 2 days off every month as needed." Randolph's physician also responded that it was necessary for Randolph to be absent from work for treatment "1 or 2 days a month as needed." Grange approved Randolph's June 28, 2002 request for FMLA leave and classified his two-day absence at the end of June as FMLA leave. Grange did not count those days, or a three-day scheduled vacation at the beginning of July, against Randolph's attendance record.

{¶ 15} Randolph was next absent from work on September 6, 2002, to receive medical treatment for asthma after spraying his apartment with bug spray, and he again missed work on September 13 and September 30, 2002, for reasons he

claimed were related to the September 6 absence. Jacobs informed Randolph in writing of his FMLA rights, but Randolph did not seek FMLA approval for his September absences, acknowledging that they would not qualify for FMLA leave because his asthma was not a chronic condition. Because each of Randolph's September 2002 absences were related, however, Grange counted the three days as the single absence that Randolph was permitted during his probation.

{¶ 16} On December 5, 2002, the final day of his absence probation, Randolph did not report for work and did not report his absence to Grange during the business day. In his complaint and in his deposition, Randolph stated that on that date, he "suffered a severe episode of reactive depression" that caused him to black out. At 4:50 p.m., having not heard from Randolph and considering that absence Randolph's second during his probation period, Randolph's supervisor, Carlene Thomas, left a voicemail message for Randolph. The message informed him that his employment was terminated for violation of his probation and for violation of Grange's policy requiring employees to report an absence within a half-hour of their scheduled start time.

{¶ 17} Randolph testified in his deposition that he awoke from his blackout during the afternoon of December 5, 2002, began to drive to his doctor's office, and decided to call Thomas regarding his absence. Before attempting to call Thomas, however, Randolph checked his voicemail and received Thomas' message terminating his employment. Randolph testified that, after learning of his termination: "I cried. I drove around. I cried. I wanted to kill myself. I cried. I did not talk to nobody. I was despondent." Randolph aborted his trip to the doctor and eventually drove to his mother's apartment. Randolph never sought medical treatment on December 5, 2002.

{¶ 18} At approximately 11:00 p.m. on December 5, 2002, Randolph's mother left a voicemail message for Thomas, stating that Randolph was under a doctor's care and would probably be admitted to the hospital, even though Randolph did not see a doctor that day. At approximately 11:50 p.m. that evening, Randolph's mother called Thomas at home, spoke with Thomas, and stated that Randolph was having a nervous breakdown. She told Thomas that Randolph was ill and suffering from a recurring condition that warranted medical leave. Thomas recommended that Randolph contact Grange's personnel department the following morning and speak with Jacobs or Mark Peacock, Manager of Personnel and Organizational Development.

{¶ 19} Randolph himself called Thomas at work at 7:15 a.m. on December 6, 2002, and indicated that he had been ill the previous day with a recurring condition that he had been suffering with for a long time. Randolph and his mother also spoke with Peacock on December 6, 2002, and requested reconsideration of Randolph's termination. In his conversation with Peacock, Randolph

stated that his doctor thought he was bipolar and that he was seeing a psychiatrist that day. Peacock explained that Randolph was terminated for failing to call in and for violating the terms of his absence probation.

{¶ 20} In its motion for summary judgment, Grange argued that it properly terminated Randolph's employment based on his violation of the absenteeism policy and the terms of his absence probation. Grange further argued that Randolph could not produce evidence to establish a genuine issue of material fact on either his FMLA or intentional-infliction-of-emotional-distress claim. In response, Randolph argued, in part, that Grange had interfered with his entitlement to FMLA leave during the period from June 28 through July 27, 2002, and that Grange had interfered with his entitlement to FMLA leave on December 5, 2002.

{¶ 21} Because it encompasses the substance of the trial court's grant of summary judgment on Randolph's FMLA claim, we first address Randolph's second assignment of error, which essentially asserts that the trial court erred by granting summary judgment in favor of Grange on Randolph's FMLA interference claim. To survive a properly supported motion for summary judgment on an FMLA interference claim, an employee must show the following: (1) he was an eligible employee; (2) the employer was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied him FMLA benefits to which he was entitled. *Edgar,* 443 F.3d at 507. It is undisputed that Randolph was an eligible employee and that Grange was an employer under the FMLA. Grange, however, disputes the remaining elements of Randolph's claim.

{¶ 22} Based on the plain language of Randolph's 2002 Certification, the trial court rejected Randolph's contention that Grange had interfered with his FMLA rights during the period from June 28 through July 27, 2002. First, the trial court properly rejected Randolph's argument that the 2002 Certification entitled him to a 30-day leave, as unsupported by any language in the 2002 Certification or by any other evidence of the type listed in Civ.R. 56(C). The 2002 Certification clearly and unambiguously states that although the probable duration of Randolph's depression would be more than six months, he would be required to work intermittently during the period from June 28 through July 27, 2002. The physician's statement that Randolph could work intermittently during that period is directly contradictory to Randolph's contention that he was entitled to FMLA leave for the entire period. Randolph's contention is further weakened because, unlike on the 2001 Certification, his physician did not indicate a return-to-work date on the 2002 Certification.

{¶ 23} The trial court next rejected Randolph's contention that Grange otherwise interfered with his FMLA rights between June 28 and July 27, 2002. Randolph neither alleged nor presented evidence that he had requested and was denied additional intermittent FMLA leave between those dates, nor does the record contain any evidence that Grange discouraged Randolph from using additional FMLA leave during that time. Moreover, during his deposition, Randolph was unable to identify any specific instance justifying his purported fear that he would be terminated for taking additional FMLA leave. Grange's absenteeism policy specifically excludes "approved family medial leave" from the definition of an "absence," and Grange, accordingly, did not count Randolph's approved FMLA leave at the end of June 2002 against his attendance record. Given the complete absence of evidence that Grange denied or otherwise interfered with Randolph's FMLA rights between June 28 and July 27, 2002, we conclude that the trial court appropriately rejected Randolph's claim of interference with his FMLA rights during that time frame.

{¶ 24} Randolph's primary arguments on appeal stem from his contention that Grange interfered with his FMLA rights by denying him FMLA leave for his December 5, 2002 absence, either as part of the intermittent leave approved under the 2002 Certification or as new, unforeseeable leave. Although the trial court extensively discussed the facts surrounding Randolph's December 5, 2002 absence and granted summary judgment in favor of Grange on Randolph's FMLA claim in toto, the trial court's analysis does not expressly address Randolph's contention that Grange interfered with his FMLA rights with respect to his December 5, 2002 absence, even though the parties briefed that issue in their memoranda in support of and in opposition to summary judgment. Because we review a summary judgment de novo, without deference to the trial court's determination, we may review that theory here.

{¶ 25} In support of its motion for summary judgment, Grange argued that the intermittent leave authorized under the 2002 Certification was limited to the period from June 28 to July 27, 2002, but that even if it extended to December 5, 2002, the 2002 Certification authorized leave only "for treatment." Grange argued, therefore, that the 2002 Certification did not entitle Randolph to FMLA leave on December 5, 2002.

{¶ 26} To the extent that the 2002 Certification's provision of one or two days' leave per month extended beyond July 27, 2002, it unambiguously provided leave expressly and exclusively "for treatment" and "the period required for recovery [from treatment] if any." Randolph admittedly did not receive treatment for his depression on December 5, 2002, and the record contains no evidence that he was recovering from treatment on that date. Although Randolph recognized a need for treatment upon awaking from his blackout and decided to visit his doctor, he

testified that he "[d]id not make it[,] [d]id not arrive, [and] did not check in" with his doctor. In the absence of evidence that Randolph received treatment for his depression or was recovering from treatment on December 5, 2002, we conclude that the 2002 Certification did not entitle him to FMLA leave on that date, even if it could be read to provide limited, intermittent leave beyond July 27, 2002.

{¶ 27} In response to Grange's motion for summary judgment, Randolph argued that even if he was not entitled to FMLA leave on December 5, 2002, under the 2002 Certification, he was entitled to new and unforeseeable FMLA leave. Under the FMLA, an employee must provide his employer with timely and substantively sufficient notice of his intent to take leave. *Harrigan v. Dana Corp.* (N.D.Ohio 2009), 612 F.Supp.2d 929, 941. Former 29 C.F.R. 825.303(a), 60 Fed.Reg. 2258, states:

> When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.[1]

" 'As soon as practicable' means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." Former 29 C.F.R. 825.302(b), 60 Fed.Reg. 2257. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." Former 29 C.F.R. 825.303(b), 60 Fed.Reg. 2258. As the Sixth Circuit Court of Appeals has stated, " '[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case.' " *Cavin v. Honda of Am. Mfg., Inc.* (C.A.6, 2003), 346 F.3d 713, 723–724, quoting *Manuel v. Westlake Polymers Corp.* (C.A.5, 1995), 66 F.3d 758, 764. Generally, whether notice is adequate is a question of fact. *Mora v. Chem–Tronics, Inc.* (S.D.Cal.1998), 16 F.Supp.2d 1192, 1209, citing *Hopson v. Quitman Cty. Hosp. & Nursing Home, Inc.* (C.A.5, 1997), 126 F.3d 635.

{¶ 28} Grange has not made any argument regarding the substance of Randolph's purported notice but, instead, argues that as a matter of law and based on his own deposition testimony, Randolph did not notify Grange of his need for FMLA leave on December 5, 2002, as soon as practicable.

{¶ 29} Randolph testified that he awoke from his blackout around 3:00 p.m. on December 5, 2002, but stated that "[i]t takes some time to get up." Randolph

---

1. Former 29 C.F.R. 825.303 was amended on November 17, 2008, and the revised version became effective January 16, 2009, as discussed more fully below. The revised regulation eliminated the second sentence quoted here.

stated that he attempted to drive to his doctor's office and, en route, decided to call Thomas to explain his absence from work. Before making that call, however, Randolph checked his voicemail and received Thomas's voicemail, informing him of his termination. Randolph testified that his depressive episode worsened upon hearing Thomas's message. Explaining his conduct upon learning of his termination, Randolph testified, "I cried, if I recall correctly, because I do this a lot. I cried. I drove around. I cried. I wanted to kill myself. I cried. I did not talk to nobody. I was despondent." Sometime after dark, Randolph drove to his mother's apartment and told her of his termination. In Randolph's presence, his mother left a voicemail message for Thomas at approximately 11:00 p.m. According to Randolph, he "was too out of it," was still depressed, and "everything [was] not sinking in." When she spoke to Thomas that evening, Randolph's mother told her that Randolph was having a nervous breakdown and was very ill with a condition that should be treated as medical leave. Randolph remained at his mother's apartment that night. The following morning, Randolph and his mother contacted Thomas, Jacobs, and Peacock regarding Randolph's December 5, 2002 absence.

{¶ 30} Grange maintains that recent case law supports its position that Randolph failed to notify it as soon as practicable of his purported need for unforeseeable FMLA leave. As one example, Grange cites *Valdivia v. BNSF Ry. Co.* (Feb. 12, 2009), D.Kan. No. 07–2467–KHV, 2009 WL 352604, in which the district court, after a bench trial, found that the plaintiff did not notify his employer of his need for unforeseeable, intermittent FMLA leave as soon as practicable. In that case, the plaintiff, suffering from a migraine ten hours before his shift, did not call his employer before taking medication, despite knowledge that the medicine could cause him to sleep deeply for 24 to 27 hours and to miss his alarm. The court concluded, "[T]aking into account all of the facts and circumstances of the case," the plaintiff was on notice that he would need FMLA leave and that a call to his employer was possible and practical at that time. Importantly, however, the *Valdivia* court had previously denied the parties' cross-motions for summary judgment on the plaintiff's FMLA interference claim, concluding that there were genuine issues of material fact as to whether, at the time he took the migraine medicine, the plaintiff's need for FMLA leave was foreseeable and as to whether he gave his employer notice as soon as practicable. See *Valdivia v. BNSF Ry. Co.* (Sept. 30, 2008), D.Kan. No. 07–2467–KHV, 2008 WL 4499978. Other courts have similarly found genuine issues of material fact as to whether an employee's notice to his employer was as soon as practicable in the FMLA context. See, e.g., *Mora,* 16 F.Supp.2d 1192; *Collins,* 466 F.Supp.2d 954 (assuming need for FMLA leave was unforeseeable, reasonable jury could conclude that employee gave notice as soon as practicable); *Washington v. Cooper Hosp./Univ. Med. Ctr.* (Dec. 2, 2005), D.N.J. No. Civ. 03–

601

5791(RBK), 2005 WL 3299006 (whether plaintiff gave employer notice as soon as practicable under the circumstances was better left for the jury); *Cole v. Uni–Marts, Inc.* (W.D.N.Y.2000), 88 F.Supp.2d 67, 76.

{¶ 31} Like the trial court, we must view the evidence in the light most favorable to Randolph, as the nonmoving party, for purposes of summary judgment. Further, for Grange to be entitled to summary judgment based on Randolph's alleged failure to give notice as soon as practicable, it must appear that reasonable minds, viewing the evidence most favorably to Randolph, could only conclude that Randolph did not give notice as soon as practicable. Although Grange points to Randolph's testimony that the depressive episode encompassing December 5, 2002, began on November 30, there is no evidence that Randolph was aware of the need for FMLA leave prior to his alleged blackout during the night of December 4. Thus, on the evidence currently before us, the earliest it would have been possible for Randolph to notify Grange of his need for leave was when he awoke from his blackout in the late afternoon of December 5. In considering all of the facts and circumstances to determine whether Randolph's notice to Grange was as soon as practicable, we may not overlook Randolph's receipt of Thomas's voicemail message, informing him of his termination, nor may we ignore the effect that message had on Randolph, who, according to his deposition testimony, was in the midst of a depressive episode that worsened upon learning of his termination. Viewing Randolph's testimony in the light most favorable to him, we cannot conclude, as a matter of law, that Randolph failed to notify Grange of his need for FMLA leave as soon as practicable. That question is more appropriately left for a trier of fact. In this limited regard, we therefore conclude that the trial court erred in granting summary judgment in favor of Grange on Randolph's FMLA interference claim, and we sustain in part Randolph's second assignment of error.[2]

{¶ 32} In his first assignment of error, Randolph argues that the trial court erred by referring to versions of pertinent regulations under the FMLA that were not in effect at the time of the events in question. The trial court cited the following regulations in its general discussion of the FMLA: 29 C.F.R. 825.302; 29 C.F.R. 825.303; and 29 C.F.R. 825.220. The original versions of those regulations took effect February 6, 1995. The Department of Labor

---

2. Grange alternatively relies on medical records it submitted in support of its motion for summary judgment to suggest that Randolph missed work on December 5, 2002, not due to his depression, but due to drug use, and that he was therefore not entitled to FMLA leave. At his deposition, Randolph denied the veracity of statements in the medical records, identified inconsistencies in the medical records, and objected to the medical records in their entirety. Accordingly, the court stated that it would not consider them on summary judgment, in light of its duty to view all of the evidence in the light most favorable to Randolph. For the same reason, we may not consider the medical records in our de novo review on appeal.

("DOL") revised the regulations in November 2008, and the revised regulations took effect January 16, 2009. Randolph maintains that the trial court erred by referring to the revised regulations.

{¶ 33} Administrative regulations, whether interpretive or legislative, are presumed to be prospective, not retroactive. See *Bowen v. Georgetown Univ. Hosp.* (1988), 488 U.S. 204, 208, 109 S.Ct. 468, 471–472, 102 L.Ed.2d 493. Accordingly, we agree with Randolph that the revised regulations do not apply in this case. Nevertheless, we conclude that the trial court's references to the revised regulations were harmless because the court's judgment was not based upon the language of the revised regulations.

{¶ 34} The only regulation relevant to our discussion on appeal is 29 C.F.R. 825.303(a). To the extent that Randolph argues that the revised version of that regulation altered the time in which he was required to give Grange notice of his need for unforeseeable FMLA leave, we disagree. In both its original and revised forms, 29 C.F.R. 825.303(a) requires, "When the approximate timing of the need for leave is not foreseeable," an employee should give notice to the employer of the need for FMLA leave "as soon as practicable under the facts and circumstances of the particular case." The revision did not change the definition of "as soon as practicable." The original version of 29 C.F.R. 825.303(a) went on to explain that "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible," whereas that explanation was eliminated from the revised regulation. Instead, the revised regulation states that "[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave."

{¶ 35} The DOL's comments on the revision are instructive. In addressing the elimination of a statement in 29 C.F.R. 825.302 that " 'as soon as practicable' [ordinarily would mean] at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee," the DOL stated that "the 'one or two business days' timeframe was intended as an illustrative outer limit, but had come to be read as allowing employees two business days from learning of their need for leave to provide notice to their employers regardless of whether it would have been practicable to provide notice more quickly." 73 Fed.Reg. 68003. The DOL went on to emphasize that "[t]he deletion of the 'two-day rule' does not change the fact that whether notice is given as soon as practicable will be determined based upon the particular facts and circumstances of the employee's situation." Id. Specifically, with respect to 29 C.F.R. 825.303, the DOL explicitly stated that "as soon as practicable" is the governing standard. Accordingly, the governing standard with respect to which

Randolph's notice to Grange must be measured is the same under both the original and revised versions of 29 C.F.R. 825.303, and we discern no prejudice to Randolph as a result of the trial court's citation to the revised version. Accordingly, we overrule Randolph's first assignment of error.

{¶ 36} Finally, we summarily overrule Randolph's third assignment of error, by which he maintains that the trial court erred by not identifying that he has a claim of discrimination or retaliation under the FMLA. Although Randolph's initial 2004 complaint framed his FMLA claim in terms of discrimination, Randolph framed his FMLA claim in his refiled complaint only as an interference claim. Because no FMLA discrimination or retaliation claim was before the trial court, we overrule Randolph's third assignment of error.

{¶ 37} In conclusion, we overrule Randolph's first and third assignments of error. We sustain Randolph's second assignment of error only to the extent that Randolph's FMLA claim is based on an alleged interference with his FMLA rights as a result of an unforeseeable need for FMLA leave on December 5, 2002. For these reasons, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand this matter for further proceedings consistent with this decision and the law.

Judgment affirmed in part,
and reversed in part,
and cause remanded.

BROWN and CONNOR, JJ., concur.