[Cite as *Hull v. Astro Shapes, Inc.*, 2011-Ohio-1656.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CLARENCE HULL, | ) | |
| | ) | CASE NO. 10 MA 26 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| ASTRO SHAPES, INC., | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
Court, Case No. 08 CV 1861.

JUDGMENT:                                        Affirmed.

APPEARANCES:
For Plaintiff-Appellant:                     Attorney Raymond J. Masek
183 W. Market Street, Suite 300
Warren, OH  44481

For Defendant-Appellee:                  Attorney James Messenger
Attorney Jeremy R. Teaberry
Henderson, Covington, Messenger,
Newman & Thomas, Co. LPA
6 Federal Plaza Central, Suite 1300
Youngstown, OH  44503-1473

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio

Dated: March 25, 2011

DeGenaro, J.

**{¶1}** Plaintiff-Appellant, Clarence Hull, appeals the decision of the Mahoning County Common Pleas Court that, upon reconsideration, granted summary judgment in favor of his former employer, Defendant-Appellee, Astro Shapes Inc., in a disability discrimination suit. On appeal, Hull argues that the trial court improperly reconsidered its earlier denial of Astro Shapes' motion for summary judgment. The denial of a Civ.R. 56 motion for summary judgment is interlocutory in nature, not final, and therefore the trial court properly reconsidered it. Further, the trial court was correct in granting summary judgment in favor of Astro Shapes as no genuine issues of material fact remained and judgment was proper as a matter of law. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

**{¶2}** Hull began work at Astro Shapes on June 7, 1999, as a janitor and fork-lift driver. According to Hull, when he was hired, he disclosed to Astro Shapes that he suffered from chronic obstructive pulmonary disease (COPD) and back problems.

**{¶3}** Astro Shapes requires all employees to abide by a Code of Conduct, which includes compliance with its attendance policy. This attendance policy permits Astro Shapes to give its employees "points" if the employee is absent from work. If an employee accrues too many points, he may be terminated. Astro Shapes' attendance policy, which is commonly called a "no-fault system", means the reason for the employee's absence is not taken into account in enforcing the attendance policy, unless the absence is excused under the Family and Medical Leave Act. Thus, Astro Shapes charges points to employees who are absent, regardless of reason, but does not apply points when an employee is absent during a period of FMLA leave.

**{¶4}** The Plant Attendance Policy and Code of Conduct states in pertinent part:

**{¶5}** "The only absences which will be considered to be excused, and therefore not resulting in the assessment of points, are the following:

**{¶6}** "(5) For eligible employees, absences which qualify under the Family and Medical Leave Act of 1993. The mere presentation of a doctor's excuse, by itself, will not cause an absence to be excused, unless the employee is otherwise eligible and the condition suffered from meets the definition of a "serious health condition" under the Family and Medical Leave Act of 1993."

**{¶7}** Hull was routinely absent from work due to breathing problems and back pain. He eventually applied for FMLA leave. He filed a certification from his treating physician with Astro Shapes and based thereon was granted provisional FMLA leave. In August 2006, Astro Shapes requested that Hull submit to a second medical examination as permitted by the FMLA. Dr. Thomas P. Yankush performed this examination and disagreed with the determination made by Hull's physician. Dr. Yankush opined that Hull's conditions did not constitute serious health conditions to qualify his leave under the FMLA.

**{¶8}** In October 2006, Astro Shapes required Hull to submit to a third medical examination as permitted by the FMLA. Astro Shapes presented Hull with a list of doctors for this examination and Hull chose Dr. E. A. DeChellis, a physician who had examined Hull in the past with regard to a workers' compensation claim. Dr. DeChellis ultimately determined that Hull's conditions were not covered under the FMLA, and this opinion became final pursuant to that statute. See Section 2613(d), Title 29, U.S.Code. Specifically Dr. DeChellis concluded:

**{¶9}** "Based upon my examination of Mr. Hull and the history obtained from him, and a review of the medical record and the history obtained from it, it is my medical opinion that Mr. Hull does have objective documentation on file to substantiate that he currently has the conditions of listhesis L5-S1, Spina bifida occulta defect at L5 and lumbar disc dessication L4-5 and L5-S1. There is historical data on file to substantiate episodic gouty arthritis.

**{¶10}** "*In my medical opinion, none of these above conditions are 'serious health conditions' as defined on page #4 of the FMLA paperwork.* The disc dessication L4-5 and L5-S1 is a normal aging process and has no clinical significance. The anteriolisthesis at

L5-S1, as well as Spina bifida occulta at L5 are congenital abnormalities. The systemic gouty arthritis is not a serious health condition."

{¶11} While Hull was on provisional FMLA leave, he did not accrue points under Astro Shapes' attendance policy. After it was determined that Hull did not suffer from a qualifying disability under the FMLA, Astro Shapes applied the points Hull had accrued during his provisional FMLA leave.

{¶12} Hull filed a charge with the Ohio Civil Rights Commission (OCRC) on January 23, 2007, in which he claimed that Astro Shapes discriminated against him based upon his spinal and pulmonary disability. This complaint was dual-filed with the Equal Employment Opportunity Commission (EEOC).

{¶13} More specifically, he claimed the following in his OCRC charge: "my FMLA rights have been denied. * * * At my pre-employment physical I told the doctor I had back problems and a breathing problem. He noted the back problem and I failed the pulmonary test. However, on June-7-1999 I was hired. Since then my condition has worsened. (Approx in the year 2002-2003) I have needed doctor ordered time off. So I have tried to use my F.M.L.A. rights but Astro Shapes has made it difficult for me to obtain FMLA and have [sic] refused it. Under company rules I can be terminated if I take time off."

{¶14} On July 19, 2007, the OCRC issued a letter of determination, stating that based on its investigation there was insufficient evidence that Hull's medical condition was the likely motivation for his alleged treatment. Accordingly, the OCRC determined there is no probable cause to believe Astro Shapes engaged in an unlawful discriminatory practice under R.C. 4112 and ordered the matter dismissed.

{¶15} On October 23, 2007, the EEOC issued a Dismissal and Notice of Rights, wherein, it adopted the findings of the OCRC.

{¶16} On May 1, 2008, Hull filed a complaint against Astro Shapes in the Mahoning County Court of Common Pleas. Hull alleged that he suffers from a qualifying disability and that Astro Shapes discriminatorily applied its attendance point system against him. He alleged two claims: one sounding in employment discrimination/FMLA;

the second for breach of an implied contract, more specifically, Astro Shapes' attendance policy. Astro Shapes filed an answer on July 10, 2008.

{¶17} After filing his complaint with the trial court, Hull continued his employment with Astro Shapes, until Astro Shapes terminated him in February 2009. The reason for his termination is unclear from the record. Hull states in his answers to interrogatories that the points he accrued from his unexcused absences counted "toward [his] firing." Astro Shapes states in its appellate brief that Hull was terminated for "performing the essential duties of his job in an unsafe, unproductive manner," however there is no evidentiary support for this. In its judgment entry the trial court states that Hull was terminated for "excessive absenteeism and failing to regularly appear for his assigned work duties." Yet this is not supported by any evidence in the record either. In any event, Hull's complaint centers on the application of Astro Shapes' attendance policy, not his termination, which, as indicated, occurred well after he filed his complaint.

{¶18} On July 20, 2009, Astro Shapes filed a motion for summary judgment. It confined its arguments to the discrimination/FMLA claim. In support it provided an affidavit of Astro Shapes' Human Resource Supervisor Kelly Shaffer, and several exhibits. Hull filed a brief in opposition. In support, Hull attached his own affidavit and two exhibits. Hull argued at the close of the brief that summary judgment regarding the disability discrimination should be overruled but stated "further remaining is plaintiff's breach of implied contract cause of action." Astro Shapes replied, claiming that it did address the breach of implied contract cause of action by setting forth in its answer the affirmative defense that Hull had failed to state a claim for which relief can be granted. It then proceeded to briefly argue why Hull failed to state a claim for breach of implied contract.

{¶19} On October 13, 2009, the trial court issued a decision denying summary judgment on the FMLA/discrimination claim, concluding there were genuine issues of material fact which precluded the grant of summary judgment. It did not discuss the implied contract claim. On November 20, 2009, Astro Shapes filed a motion for reconsideration/clarification of the trial court's earlier denial of summary judgment. This

was opposed by Hull.

{¶20} On January 11, 2010, the trial court issued a decision. Upon reconsideration, it granted summary judgment in favor of Astro Shapes. Specifically, the court ruled: (1) Hull's complaint was filed after the statute of limitations for any federal claim, e.g., one based upon the ADA or the FMLA; and (2) to the extent Hull's claim was pursuant to Ohio's employment discrimination laws (R.C. 4112), that Hull failed to establish a prima facie case for discrimination.

### Reconsideration of the Denial of a Civ.R. 56 Motion

{¶21} Hull asserts in his sole assignment of error:

{¶22} "Where a trial court finds an employment action correctly brought pursuant to R.C. 4112.02 under a Rule 56 motion, can it then engage in an analysis of the factual underpinnings further to a subsequent motion for reclarification and/or reconsideration. Judgment Entry dtd. 1/11/10 p. 206, 207, 208."

{¶23} Hull contends the trial court improperly reconsidered its October 13, 2009 order denying Astro Shapes' motion for summary judgment, characterizing Astro-Shapes' motion for reconsideration as a Civ.R. 60(B) motion for relief from judgment. He then proceeds to argue, under a Civ.R. 60(B) analysis, why the trial court's grant of the motion was improper.

{¶24} "Civ.R. 60(B) is a tool used to vacate final orders only." *Whetzel v. Starkey* (Nov. 29, 2000), 7th Dist. No. 99 BA 42, at *3, citing *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 78, 20 OBR 407, 486 N.E.2d 99. Had the trial court granted summary judgment in favor of Astro Shapes, a way to challenge that would be through a Civ.R. 60(B) motion. Here the trial court *denied* Astro Shapes' motion for summary judgment.

{¶25} A denial of summary judgment is not a final order, but rather interlocutory in nature. *Moore v. Ohio Valley Coal Co.*, 7th Dist. No. 05 BE 3, 2007-Ohio-1123, at ¶11, citing, *Vaccariello v. Smith & Nephew Richards, Inc.* (2002), 94 Ohio St.3d 380, 386, 763 N.E.2d 160. A court is not bound by its prior decision denying summary judgment. To the contrary, a court may reconsider it either by motion of one of the parties or sua

sponte. It "is subject to revision by the trial court at any time prior to entry of final judgment, and the court may correct an error upon motion for reconsideration predicated upon the same law and facts." *Poluse v. City of Youngstown* (1999), 135 Ohio App.3d 720, 725, 735 N.E.2d 505.

{¶26} Thus, a trial court's decision whether or not to reconsider an earlier denial of summary judgment is reviewed for an abuse of discretion. See *Tablack v. Wellman*, 7th Dist. No. 04-MA-218, 2006-Ohio-4688, at ¶37, 40. This means more than an error of judgment but rather that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Here the trial court's decision to entertain the reconsideration motion was not an abuse of discretion, nor does Hull point to any evidence demonstrating as much. Thus, Hull's procedural arguments are meritless.

{¶27} Astro Shapes contends that based on the content of Hull's appellate brief, our analysis should end here. That is, Astro Shapes argues that this court need not address the trial court's merit determination regarding summary judgment since Hull's arguments on appeal center on whether the trial court's decision to reconsider its prior ruling was procedurally improper. Although the lion's share of Hull's brief focuses on procedural issues, Hull's brief does, briefly, discuss the merits of the summary judgment ruling.

### Standard of Review – Reconsideration of Summary Judgment

{¶28} As discussed, a "trial court's decision whether to reconsider a previous interlocutory order is reviewed under an abuse of discretion standard, * * * [i]f a trial court chooses to reconsider its prior decision, [ ] an appellate court must apply the standard of review applicable to the merits of the motion being reconsidered." *Klocinski v. American States Ins. Co.*, 6th Dist. No. L-03-1353, 2004-Ohio-6657, at ¶12. An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the party against whom

the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶10. Only the substantive law applicable to a case will identify what constitutes a material issue, and only the disagreements "over facts that might affect the outcome of the suit under the governing law" will prevent summary judgment. *Byrd* at ¶12, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

**{¶29}** When moving for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 1996-Ohio-107, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. Id. at 293.

**{¶30}** Here the trial court ruled that summary judgment in favor of Astro Shapes was proper as a matter of law and dismissed Hull's claims. Specifically, the court ruled that: (1) Hull's complaint was filed after the statute of limitations for any federal claim, e.g., one based upon the ADA or the FMLA; and (2) to the extent Hull's claim was pursuant to Ohio's employment discrimination laws (R.C. 4112), that Hull failed to establish a prima facie case for discrimination. Each of the court's rulings will be discussed in turn.

### FMLA/ADA

**{¶31}** Although Hull states in the introductory paragraph of his complaint that he is seeking redress against Astro Shapes pursuant to "applicable provisions of R.C. 4112 and the common law" the crux of his complaint is that Astro Shapes improperly denied his request for FMLA leave. He also complains that Astro Shapes improperly required him to submit to a third medical examination, which is also part and parcel to his FMLA leave request. There also is language that could implicate the Americans with Disabilities Act, however, since Ohio's disability discrimination statute tracks the ADA, it is unclear

whether an ADA claim is raised in Hull's complaint. As the trial court notes in its judgment entry: "Although Plaintiff's complaint does not explicitly state a claim for relief based on either the FMLA or the ADA, those terms, or some variation thereof, are mentioned or referenced."

{¶32} To the extent Hull's complaint raised an ADA or FMLA claim, the trial court determined that such a claim was time-barred. The rationale for this ruling was the EEOC's October 23, 2007 notice of dismissal and right to sue letter, which stated that a lawsuit against the employer under federal law based on the charge must be filed in state or federal court "WITHIN 90 DAYS of the receipt of this notice; or [the] right to sue based on this charge will be lost."

{¶33} The notice specifically limits the 90-day window to claims brought under "Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act." Based on this language the trial court was correct in concluding that any claim based on the ADA was untimely.

{¶34} However, the same cannot be said for the FMLA claim. The EEOC's dismissal notice does not mention the FMLA. The EEOC has no enforcement responsibility for that statute. Rather, it is the Department of Labor that enforces the FMLA. See Section 2617(b), Title 29, U.S.Code. Thus, Hull was not required to file an FMLA-based claim within 90 days of the receipt of the EEOC's dismissal letter.

{¶35} Rather, the statute of limitations for an FMLA claim is set forth in Section 2617(c), Title 29, U.S.Code:

{¶36} "(1) In general. Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

{¶37} "(2) Willful violation. In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." Section 2617(c), Title 29, U.S.Code.

{¶38} Here it is unclear from the record the precise day that Astro Shapes denied

Hull's request for FMLA leave. It is clear that Dr. DeChellis rendered the third medical examination, which ultimately formed the basis for the FMLA denial, on October 26, 2008. Thus, even under the two-year statute of limitations, any FMLA claim made by Hull in his complaint, which was filed on May 1, 2008, was timely. The trial court incorrectly concluded that any claim made under the FMLA was time-barred.

{¶39} However, the trial court's error was harmless because Hull failed to set forth a claim under the FMLA. The FMLA entitles a qualifying employee up to 12 weeks of unpaid leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." Section 2612(a)(1)(D), Title 29, U.S.Code. A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves-(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Section 2611(11), Title 29, U.S.Code.

{¶40} "The FMLA provides a private right of action to employees to protect their rights to such leave under two different theories: the 'interference' or 'entitlement' theory, under which employers may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' FMLA rights, [Section 2615(a)(1), Title 29] and the 'retaliation' or 'discrimination' theory, under which employers may not 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA, [Section 2615(a)(2), Title 29]" *Branham v. Gannett Satellite Information Network, Inc* (C.A.6, 2010),619 F.3d 563, 568, citing *Hoge v. Honda of Am. Mfg., Inc.* (C.A.6, 2004), 384 F.3d 238, 244.

{¶41} Hull alleges an FMLA interference claim in his complaint. "To survive a properly supported motion for summary judgment on an FMLA interference claim, an employee must show the following: (1) he was an eligible employee; (2) the employer was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied him FMLA benefits to which he was entitled." *Randolph v. Grange Mut. Cas. Co.*, 185 Ohio App.3d 589, 2009-Ohio-6782, 925 N.E.2d 149, at ¶21, citing *Edgar v. JAC Prods.,*

*Inc.* (C.A.6, 2006), 443 F.3d 501, 507.

**{¶42}** Here it is undisputed that the first, second and fourth elements are satisfied. However, the third and fifth are not. Hull has failed to show that he was entitled to leave under the FMLA because he met these two requirements.

**{¶43}** Instead, he takes issue with the fact that Astro Shapes required him to submit to three medical examinations. Yet, the FMLA expressly provides for just that. Section 2613, Title 29, U.S.Code entitled "Certification" states in pertinent part:

**{¶44}** "(a) In general. An employer may require that a request for leave under subparagraph (C) or (D) of paragraph (1) or paragraph (3) of section 2612(a) of this title be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, or of the next of kin of an individual in the case of leave taken under such paragraph (3), as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer. * * *

**{¶45}** "(c) Second opinion

**{¶46}** "(1) In general. In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.

**{¶47}** "(d) *Resolution of conflicting opinions.*

**{¶48}** "(1) In general. In any case in which the second opinion described in subsection (c) of this section differs from the opinion in the original certification provided under subsection (a) of this section, the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee concerning the information certified under subsection (b) of this section.

**{¶49}** "(2) Finality. *The opinion of the third health care provider concerning the*

*information certified under subsection (b) of this section shall be considered to be final and shall be binding on the employer and the employee.*" (Emphasis added.) Section 2613(a), (c)-(d), Title 29, U.S.Code.

**{¶50}** Astro Shapes followed the certification procedure as outlined above. As support for his application for FMLA leave, Hull submitted a certification from his treating physician. Astro Shapes requested that Hull submit to a second medical examination as permitted by the FMLA. The second physician, Dr. Yankush disagreed with Hull's physician, and opined that Hull's conditions did not constitute serious health conditions under the FMLA. In order to resolve the two conflicting opinions, Astro Shapes required Hull to submit to a third medical examination, which was performed by Dr. DeChellis. He ultimately determined that Hull's conditions did not constitute serious medical conditions under the FMLA, and his opinion became final pursuant to Section 2613(d), Title 29, U.S.Code.

**{¶51}** In his affidavit attached to his brief in opposition to Astro Shapes' motion for summary judgment, Hull claims that he was forced to choose the third physician from a list compiled by Astro Shapes, despite his protestations. However, that was the first time he made such an allegation. During his deposition, Hull admitted that the impetus of his complaint was that he did not agree with the *results* of the third medical examination. He never mentioned he felt compelled by Astro Shapes to choose a doctor from Astro Shapes' list nor did he allege that he expressed disagreement about choosing a doctor from their list. Generally, self-serving affidavits such as Hull's cannot be used by the non-moving party to survive summary judgment. *Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718, 843 N.E.2d 1238, at ¶24.

**{¶52}** Thus, for the foregoing reasons, the trial court properly granted summary judgment on Hull's ADA claim, to the extent one was raised. The trial court was also correct in granting summary judgment on the FMLA claim, to the extent one was raised, albeit for the wrong reason.

### R.C. 4112.02

**{¶53}** To the extent that Hull is alleging a state-law claim for disability

discrimination pursuant to R.C. 4112.02, the trial court correctly granted Astro Shapes' summary judgment. In order to establish a prima facie case of disability discrimination, the person seeking relief must demonstrate: (1) that he or she was disabled, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738, at paragraph one of the syllabus.

{¶54} A disability means "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

{¶55} "Physical or mental impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the body's major systems, including the musculoskelatal system, R.C. 4112.01(A)(16)(a)(I); any mental or psychological disorder, R.C. 4112.01(A)(16)(a)(ii); or a disease or condition, including heart disease, R.C. 4112.01(A)(16)(a)(iii). "Major life activities" include "the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." R.C. 4112.01(A)(13).

{¶56} As recently explained by the Second District:

{¶57} "For the meaning of 'substantially limits' we look to the federal regulations that interpret the Americans with Disabilities Act (ADA). See *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573 (looking to federal regulations and cases interpreting the ADA for help interpreting Ohio disability law). The relevant federal regulation defines 'substantially limits' generally to mean, as one Ohio court has summarized, the 'inability to perform or a severe restriction on the ability to perform, as compared to the average person in the general population.' *Slane v. MetaMateria Partners, L.L.C.*, 176 Ohio App.3d 459, 2008-Ohio-2426, at ¶16, citing former Section 1630.2(I), Title 29, C.F.R. (now section 1630.2[j][1] of Title 29)." *Wallace v. Mantych*

*Metalworking*, 2d Dist. No. 23704, 2010-Ohio-3765, at ¶20.

**{¶58}** Further, the United States Supreme Court has explained that the term "substantially limits" must be "interpreted strictly to create a demanding standard for qualifying as disabled" under the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams* (2002), 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615, superseded by statute [not applicable to this case] ADA Amendments Act of 2008 Pub. L. No. 110-325, 122 Stat. 3553. "Thus, an impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation * * *." *Kredel v. Austinwoods*, 7th Dist. No. 08 MA 19, 2008-Ohio-5140, citing *Mahon v. Crowell* (C.A.6, 2002), 295 F.3d 585.

**{¶59}** Hull alleged in his complaint that he suffers from "chronic obstructive pulmonary disease ('COPD') and back problems medically diagnosed as multitude of L-spine etiology: Lumbar disc dissection L-4-5, L5-S1 ontericoliathesis L5-S1, spina bifida occulta." These qualify as "physical impairments" pursuant to R.C. 4112.01(A)(16)(a)(iii). Whether these physical impairments substantially affect one or more major life activities is another issue. When asked during his deposition to specify which major life activities are affected, Hull stated: "cleaning the house, taking a bath, [and] climbing stairs." He stated he experiences some back discomfort taking a bath, when getting in and out of the tub. He stated he could only clean the house for twenty to thirty minutes before taking a break. However, he also stated he lives alone and is able to sweep the floor and clean the bathroom and toilet, with only a little discomfort. He testified he does not wash his car as often as in the past. Hull also stated that walking causes him some discomfort and that he has to stop after five or ten minutes to take a break. He testified that he takes no medication, prescription or over-the-counter, for his pain. He occasionally wears a back brace which was given to him by a friend.

**{¶60}** Based on his deposition testimony, Hull's conditions do not substantially limit one or more major life activities. His slight discomfort in bathing himself does not rise to the level of substantially limiting the life activity of caring for oneself. His difficulties in cleaning his home are mild and do not rise to the level of substantially limiting the life

activity of performing manual tasks.

{¶61} Finally, his walking difficulties are not substantially limiting. "Mere difficulty in standing or walking is not sufficient to establish a substantial limitation on the major life activity of walking. See *Brown v. BKW Drywall Supply, Inc.* (S.D.Ohio 2004), 305 F.Supp.2d 814, 825. Even moderate difficulty in walking may not establish a substantial impairment. See *Satterly v. Borden Chem., Inc.* (C.A.6, 2001), 24 Fed.Appx. 471, 472 (holding that difficulty walking, or having to walk at a slower pace than others failed to establish a substantial impairment)." *Sheridan v. Jackson Twp. Div. Fire*, 10th Dist. No. 08AP-771, 2009-Ohio-1267, at ¶8. Accordingly, Hull has not established he is disabled. For this reason, Hull has not made out a prima facie case for disability discrimination.

{¶62} The trial court's analysis regarding the prima facie case seems somewhat disjointed insofar as it commingles analysis of the prima facie case with analysis of pretext. Hull correctly points out that issues of pretext are analyzed in a subsequent, separate step, and only after a prima facie case has been established.

{¶63} As this court has previously explained:

{¶64} "'Once the plaintiff establishes a prima facie case of handicap [disability] discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken.' *Hood*, supra, at 302.

{¶65} "The employer's burden is only one of production, satisfied upon the presentation of an explanation legally sufficient to justify judgment for the employer. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 664, 591 N.E.2d 752, 752, paragraph two of the syllabus, citing *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207

{¶66} "'[I]f the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination.' *Hood* at 302." *Kemo v. St. Clairsville* (1998), 128 Ohio App.3d 178, 184, 714 N.E.2d 412.

{¶67} However, any error in the structure of the trial court's analysis is harmless, because, as discussed, Hull has not established that he is disabled and therefore he has

not set forth a prima facie case for disability discrimination. Accordingly, granting Astro Shapes' summary judgment on the R.C. 4112.02 claim was proper.

{¶68} Hull's sole assignment of error is meritless. The denial of a Civ.R. 56 motion for summary judgment is interlocutory in nature, not final, and therefore the trial court properly reconsidered it. Further, the trial court was correct in granting summary judgment in favor of Astro Shapes as no genuine issues of material fact remained and judgment was proper as a matter of law. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.